## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL LEITERMAN** | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| **v.** | )  **Civil Action No. 13-cv-394(CKK)** |
| | ) |
| **JANET NAPOLITANO, Secretary,** | ) |
| **DEPARTMENT OF HOMELAND** | ) |
| **SECURITY, et al.** | ) |
| | ) |
| *Defendants.* | ) |

## MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants hereby move pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil

Procedure to dismiss the Complaint in this action on the grounds that Plaintiff has failed to state

a claim upon which relief can be granted and has not exhausted the administrative procedures

prerequisite to seeking judicial relief.

Alternatively, should the Court conclude that Plaintiff has adequately alleged facts to

support his claims, the Court should enter summary judgment, pursuant to Fed. R. Civ. P. 56,

because there are no material issues of fact and Defendant is entitled to judgment as a matter of

law.[1]

Defendants also move, alternatively, that plaintiff's prayer for monetary relief be

---

[1]  To the extent that the Court may rely on matters outside of the pleadings, the Court may enter
summary judgment in favor of Defendants.  See Fed. R. Civ. P. 12(d); 56.

dismissed for his claim under Section 508 of the Rehabilitation Act.

The grounds for this motion are more fully set forth in the accompanying memorandum.

Respectfully submitted,

RONALD C. MACHEN JR., DC Bar #447889
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, DC Bar #924092
Chief, Civil Division

By: _____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC  20530
Tel: (202) 252-2536
Email:  mark.nebeker@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **MICHAEL LEITERMAN** | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| **v.** | ) | Civil Action No. 13-cv-394(CKK) |
| | ) | |
| **JANET NAPOLITANO, Secretary,** | ) | |
| **DEPARTMENT OF HOMELAND** | ) | |
| **SECURITY, et al.** | ) | |
| | ) | |
| *Defendants.* | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**LEGAL STANDARDS**

An action will dismissed where the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); *Taylor v. District of Columbia*, 606 F. Supp. 2d 93,97 (D.D.C. 2009).  To avoid dismissal, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant a fair notice of what the  . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (citing *Twombly*, 550 U.S. at 556).  Nevertheless, "[w]hile the court must construe the Complaint in the plaintiff's favor, it 'need not accept inferences drawn by the plaintiff [ ] if such inferences are unsupported by the facts set out in the complaint.'" *Melson v. Salazar*, 598 F.Supp.2d 71, 73 (D.D.C. 2009) (*quoting Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  "Moreover, the court is not bound to accept the legal conclusions of the non-moving party."  *Melson*, 598 F.Supp.2d at 73 (citing *Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997)).

"A defendant may raise the affirmative defense of statute of limitations via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint," and "[i]f no reasonable person could disagree on the date on which the cause of action accrued" and the complaint is "conclusively time-barred," it may be dismissed. *DePippo v. Chertoff*, 453 F.Supp.2d 30, 33 (D.D.C. 2006) (internal citations and quotation marks omitted).

Under Rule 12(c), when, as here, a moving party attaches material to the motion, it is converted to one under Rule 56. Under Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In determining whether there exists a genuine issue of material fact, the Court must view all facts, and reasonable inferences to be drawn from them, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. Indeed, in order to withstand summary judgment, the non-moving party may not rest upon mere allegations or denials. *Id.* at 248. The mere existence of some factual dispute is insufficient to withstand summary judgment; there must be a genuine issue of material fact. *Id.* at 247-48. There is no genuine issue of material fact if the relevant evidence of record, taken as a whole, indicates that a reasonable factfinder could not return a verdict for the party opposing summary judgment. *Id.* at 248. If the submitted evidence is of such a character that it would not permit a reasonable fact finder to find in favor of the non-moving party, summary judgment is appropriate. *Id.* at 251.

Rule 56 does not require the moving party to negate the non-movant's claim or to show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Rather, when the movant files a properly-supported summary judgment motion, the burden shifts to the nonmoving party to show "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, or with "conclusory allegations," "unsubstantiated assertions," "or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## ARGUMENT

### A.  Plaintiff's Failure to Promote Claim (Count III) Fails Because He Did Not Timely Exhaust his Administrative Remedies.

Plaintiff has alleged that, in April 2010, the Agency failed to promote him to a GS-14 level because of his disability.  Complaint, ¶¶ 44-46, 70.  Plaintiff further alleges that the Agency violated Section 501 of the Rehabilitation Act by requiring him to repay the government for funds erroneously paid to him in February and March 2010.  Complaint, ¶ 70.  Plaintiff, however, did not contact an EEO counselor until June 3, 2011, more than a year after the alleged discrimination occurred.  Complaint, ¶5.   He has failed to exhaust his administrative remedies and dismissal is appropriate.

In order to bring this Rehabilitation Act action in federal court, plaintiff must have timely exhausted administrative remedies.  *Porter v. Sebelius*, ___ F.Supp.2d ___,  Civil Action No. 11-1546, 2013 WL 1966063 at *2, (D.D.C. May 14, 2013) (*citing Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006) (holding that exhaustion of administrative remedies is a jurisdictional requirement of the Rehabilitation Act)); *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003).  The administrative requirements a plaintiff must meet in order to proceed in federal court are set

out in the Code of Federal Regulations.  29 C.F.R. § 1614.105(a)(1) ("[a]n aggrieved person

must initiate contact with a [EEO] Counselor within 45 days of the date of the matter alleged to

be discriminatory or, in the case of personnel action, within 45 days of the effective date of the

action.").

As the Court of Appeals  has observed, Section 501 of the Rehabilitation Act

expressly "limits judicial review to employees 'aggrieved by the final disposition' of their

administrative 'complaint,' 29 U.S.C. § 794a(a)(1), thereby mandating administrative

exhaustion."  Unlike Title VII's exhaustion requirements, the Rehabilitation Act's

exhaustion requirements are jurisdictional.  *See Spinelli*, 446 F.3d at 162 ("The district

court also should have dismissed Spinelli's Rehabilitation Act claim for lack of

jurisdiction on the ground that he has failed to exhaust his administrative remedy."); *Int'l

Union v. Clark*, Civil Action No. 02-1484, 2006 U.S. Dist. LEXIS 64449, 2006 WL

2598046, at *9 (D.D.C. Sept. 11, 2006) (observing that exhaustion of administrative

remedies is "a jurisdictional predicate to Section 501 claims").

The fact that the Agency initially accepted and investigated plaintiff's allegation is not

sufficient to overcome the failure to exhaust the time limits to contact an EEO counselor or to

allege that the agency waived its right to raise the timeliness issue in litigation.  *Stallworth v.

Reich*, 107 F.3d 923 (Table), No. 95-5268, 1997 WL 71731, *2 (D.C. Cir. Jan. 7, 1997) ("the

fact that the Department chose to investigate the problem itself . . . does not preclude it from

raising the timeliness defense here"); *Brown v. Marsh*, 777 F.2d 8, 15 (D.C. Cir. 1985) (finding

courts are "loath to hold that mere investigation" of a plaintiff's complaint or claim "without

more constitutes a binding waiver of any agency's right to raise the timeliness issue."); *Salz v.

Lehman*, 672 F.2d 207, 208-09 (D.C. Cir. 1982) (affirming dismissal for lack of subject matter

jurisdiction where appellant failed to meet the time limits to contact an EEO counselor)  (*citing*

*Oaxaca v. Roscoe*, 641 F.2d 386, 390 (5th Cir. 1981) (rejecting the contention that, by merely

accepting and investigating a tardy complaint, an agency waives its objection to a complainant's

failure to comply with time-filing prescriptions.))

Accordingly, based solely on the face of the Complaint, this Section 501 claim is time-

barred, and should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil

Procedure.

**B.  Plaintiff's Section 508 Claim (Count I) Must Be Dismissed**

**1.    Plaintiff's 508 Claim is Precluded by an Exclusive Remedial Scheme.**

Section 501 of the Rehabilitation Act is the exclusive remedy for claims of disability

discrimination in federal employment.  *See Taylor v. Small*, 350 1286, 1291 (D.C. Cir. 2003)

(dismissing claim brought by federal employee against his federal employer under section 504

and agreeing with the Ninth Circuit that "section 501 is the exclusive remedy for discrimination

in employment by [a federal agency] on the basis of handicap"); *Porter v. Sebelius*, ___

F.Supp.2d ___, Civil Action No. 11–1546 GK, 2013 WL 1966063, at *1 n.1 (D.D.C. 2013)

(citing *Taylor* and holding that § 501 is the exclusive remedy for claims of disability

discrimination in federal employment); *Sataki v. Broadcasting Bd. of Governors*, 733 F. Supp.

2d 1, 11 (D.D.C. 2010)  ("The D.C. Circuit has made clear . . . that Section 501 of the

Rehabilitation Act provides the exclusive remedy for federal employees alleging disability

discrimination"); *Klute v. Shinseki*, 797 F. Supp. 2d 12, 17 (D.D.C. 2011 (dismissing claim

brought under section 503 of the Rehabilitation Act); *Edwards v. U.S. E.P.A.*, 456 F. Supp. 2d

72, 100 (D.D.C. 2006) (dismissing section 504 claim because 501 is exclusive); *See generally*

*Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2140 (2012) (explaining that covered federal

employees could not bring constitutional claim related to their employment outside of the scheme set out in the Civil Service Reform Act); *Davis v. Billington*, 681 F.3d 377, 384-86 (D.C. Cir. 2012) (holding that the Civil Service Reform Act is a comprehensive remedial scheme that precluded a Bivens action by a Library of Congress employee, even though the plaintiff could not obtain relief under the Act).

As with Title VII, a federal employee plaintiff cannot maintain a tort claim, a constitutional claim, or a claim pursuant to another statutory provision, including section 504 or 508, that is based upon the same set of underlying facts that otherwise support a claim under section 501.  *See, e.g., McGuinness v. U.S. Postal Service*, 744 F.2d 1318, 1322 (7th Cir. 1984) (*citing Brown v. GSA*, 425 U.S. 820, 833 (1976), for the proposition that "any effort to avoid sections 505's requirement of exhausting administrative remedies by challenging the same conduct under another provision of law must fail because it would 'allow [Congress's] careful and thorough remedial scheme to be circumvented by artful pleading.'").  Here, plaintiff attempts to evade his exclusive remedy under § 501 to pursue a claim of disability discrimination by pursuing a claim under § 508.  This claim is precluded by the exclusive remedy provided by section 501 and should be dismissed.

### 2.	There Is No Private Right of Action Under Section 508

Section 508(f) of the Rehabilitation Act provides, in part:

> (f) Enforcement.
>     (1) General
> (A) Complaints. Effective 6 months after the date of publication by the Access Board of final standards described in subsection (a)(2), any individual with a disability may file a complaint alleging that a Federal department or agency fails to comply with subsection (a)(1) in providing electronic and information technology.
>         . . .
> (2) Administrative complaints. Complaints filed under paragraph (1) shall be filed with the Federal department or agency alleged to be in noncompliance. The Federal department or agency receiving the complaint shall apply the complaint procedures

established to implement section 794 [section 504 of the Rehabilitation Act] for resolving allegations of discrimination in a federally conducted program or activity.

*(3) Civil Actions. The remedies, procedures, and rights set forth in sections 794a(a)(2) and 794a(b) [sections 505(a)(2) and 505(b) of the Rehabilitation Act] shall be the remedies, procedures, and rights available to any individual with a disability filing a complaint under paragraph (1)*

29 U.S.C. § 794d(f) (emphasis added).

As set forth in paragraph (3) above, civil actions under section 508 are limited by sections 505(a)(2) and 505(b). And, relevant here, a cause of action against a federal agency is *not* one of the "the remedies, procedures, and rights set forth in sections" 505(a)(2) and 505(b) (29 U.S.C. §§ 794(a)(a)(2) and 794a(b)). Instead, these provisions permit the filing of *administrative* complaints under federal agency regulations to resolve any claims of disability discrimination in federal agency programs.[1] The agency, in this case DHS, then resolves the administrative complaint, and there can be judicial review of the final agency decision only via the Administrative Procedure Act. *See, e.g.*, *Cousins v. Secretary of the U.S. Department of Transportation*, 880 F.2d 603, 605–06 (1st Cir. 1989) (en banc); *Clark v. Skinner*, 937 F.2d 123, 125–26 (4th Cir. 1991); *Wilson v. Seattle Housing Authority*, 2010 U.S. Dist. Lexis 39763, at *13–15 (W.D. Wash. Apr. 22, 2010); *Mathis v. GEO Group, Inc.*, 2009 U.S. Dist. Lexis 132301, at *17–27 (E.D.N.C. Nov. 9, 2009); *Kinneary v. City of New York*, 358 F. Supp. 2d 356, 359–60

---

[1] The Secretary of the Department of Homeland Security's regulations for implementing the Rehabilitation Act provide an administrative procedure for resolving alleged violations of the Act, including allegations of Section 508 violations. 6 C.F.R. §§ 15.1-70. The regulations provide that "[a]ny person who believes that he or she has been subjected to discrimination prohibited by [the Act] may . . . file a complaint" with the Department of the Homeland Security. *Id.* § 15.70. "The agency shall accept and investigate all complete complaints over which it has jurisdiction." *Id.* § 15.70(d). "Agency employees are required to cooperate in the investigation and attempted resolution of complaints." *Id.* § 15.70(g). The regulations also provide for an administrative appeal of the findings of fact and conclusions of law or remedies, resulting in the Agency's final decision. *Id.* § 15.70(h). The agency must notify the complainant of the results of the appeal within 30 days, unless good cause is found to extend that period. *Id.* § 15.70(j).

(S.D.N.Y. 2005); *Krumel v. City of Fremont*, 2002 U.S. Dist. Lexis 6089, at \*5–15 (D. Neb. Jan. 2, 2002); *Crayton v. Shalala*, 1995 U.S. Dist. Lexis 21983, at \*13–16 (N.D. Ala. May 3, 1995), *affirmed under the name Crayton v. Callahan*, 120 F.3d 1217 (11th Cir. 1997); *see also Cooke v. U.S. Bureau of Prisons*, 2013 U.S. Dist. Lexis 26947, at \*26 (E.D.N.C. Feb. 27, 2013) (recognizing, without deciding, that "a strong argument exists for holding that the source of the . . . cause of action should be the APA"); Executive Order No. 13160, 65 Fed. Reg. 39775, 39775–78 (June 23, 2000) (prohibiting discrimination on the basis of disability in all federally-conducted education and training programs and activities, and providing for enforcement through an administrative process, with judicial review of final agency decisions available under the APA). *But see Doe v. Attorney General of the United States*, 941 F.2d 780, 794 (9th Cir. 1991); *J.L. v. Social Security Administration*, 971 F.2d 260, 264–70 (9th Cir. 1992).

In short, Section 508 "cannot form the basis for a civil action" in Federal court because "the statute does not authorize a private, non-administrative right [of] action." *Latham v. Brownlee*, 2005 WL 578149, at \*9 (W.D. Tex. Mar. 3, 2005). In this instance, Plaintiff initiated the administrative process for his Section 508 claims but did not complete it before filing the instant suit. As such, there is no cause of action under § 508 and no final agency action for this Court to review even were Plaintiff attempting to bring a claim under the APA. These claims should be dismissed.

### 3.     There is No Waiver of Sovereign Immunity for Monetary Relief Under Section 508

In addition, Defendants move to dismiss or strike Plaintiff's prayer for damages under Section 508,[2] as he has failed to invoke any applicable statutory waiver of sovereign immunity. The Rehabilitation Act does not waive sovereign immunity for plaintiffs' damages claims under Section 508. *Swafford v. Nicholson*, Civil Action No. 3:06–CV–396–H, 2010 WL 3397341 at *1, 2010 U.S. Dist. Lexis 88419 at *3 (W.D. Ky. Aug. 26, 2010), *see also Dorsey v. Department of Labor*, 41 F.3d 1551, 1554-55 (D.C. Cir. 1994) (wherein the Court declined to find a waiver of sovereign immunity for a claim for damages under Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d, *et seq*) because even if a damages remedy could be implied against a private party, there was no "unequivocally expressed" waiver of sovereign immunity for such a claim against the Federal Government).

Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute,  *see Willy v. Coastal Corp.*, 503 U.S. 131, 136-137 (1992); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986), which is not to be expanded by judicial decree, *American Fire & Casualty Co. v. Finn*, 341 U.S. 6 (1951).  It is to be presumed that a cause lies outside this limited jurisdiction, *Turner v. Bank of North America*, 4 U.S. 8, (1799), and the burden of establishing the contrary rests upon the party asserting jurisdiction, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-183, (1936).

---

[2] If Plaintiff could establish a claim under section 501of the Rehabilitation Act, he might then secure a damages remedy, but the waiver of sovereign immunity for such a claim is separate from the remedies available under Section 508.

The United States as sovereign is immune from suit unless that immunity has been waived. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994), *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Such a waiver must be "unequivocally expressed in statutory text," and "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Peña*, 518 U.S. 187, 192 (1996).  The plaintiff bears the burden of establishing that an applicable waiver of sovereign immunity has occurred, and must plead the basis for such a waiver in his complaint.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983) ("The party who sues the United States bears the burden of pointing to . . . an unequivocal waiver of immunity."); *Uberoi v. EEOC*, 180 F. Supp. 2d 42, 45 (D.D.C. 2001) ("[A]ny party bringing an action against the United States has the burden of alleging that the government has waived its immunity with regard to the claim at issue.").  If sovereign immunity has not been waived, the court lacks subject matter jurisdiction.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

The Rehabilitation Act's Section 508 provides that "the remedies, procedures, and rights set forth in sections 794a (a)(2) and 794a (b) [Section 505] of this title shall be the remedies, procedures, and rights available to any individual with a disability filing a complaint under paragraph (1)."  In *Lane v. Peña*, the Supreme Court considered and rejected the proposition that Section 505 of the Rehabilitation Act waived sovereign immunity for damages.  518 U.S. 187 (1996).  Lane, a cadet at the Merchant Marine Academy had been terminated because his diabetes made him ineligible for a commission.  Alleging that his termination violated the Rehabilitation Act, the cadet sought compensatory damages, along with other relief, under the authority of Section 505.  The Supreme Court held that a waiver of sovereign immunity "must extend unambiguously" to the plaintiff's claim, and the Rehabilitation Act's provision of

remedies "for violations of § 504(a) . . . 'by any recipient of Federal assistance or Federal

provider of such assistance' . . . makes no mention whatsoever of 'program[s] or activit[ies]

conducted by any Executive agency.'" *Id.* at 192.   The court concluded that Section 505 of the

Rehabilitation Act did not waive sovereign immunity for monetary damages against the federal

government.  *Id.*

> Plaintiffs argue that the Supreme Court has not specifically ruled that sovereign immunity was retained under § 508 and that, in fact, sovereign immunity was waived. The Court disagrees. The remedy provision for violations of § 508 is the same remedy provision for violations of § 504, namely § 505(a)(2) of the Rehabilitation Act, codified at 29 U.S.C. § 794a(a)(2). In *Lane,* the Supreme Court explicitly found that " § 505(a)(2) does not, without more, establish that Congress has waived the Federal Government's immunity against monetary damages awards beyond the narrow category of ... violations committed by federal funding agencies acting as such-that is, by 'Federal providers.' " *Lane,* 518 U.S. at 193. Plaintiff has not alleged that Defendant is such a "federal provider." Because the same remedy provision at issue here was at issue in *Lane,* the Court finds *Lane's* analysis controlling   In *Lane,* the Supreme Court specifically noted the difference in language between the remedy provision and the general prohibition of discriminatory actions contained in § 504. § 504 applies to "any Executive agency," 29 U.S.C. § 794(a), while the remedy of monetary damages is only available to individuals "aggrieved by any act or failure to act by any *recipient of Federal assistance or Federal provider of such assistance,* " 29 U.S.C. § 794a(a)(2) (emphasis added). The Court observed that the remedy provision "makes no mention whatsoever of programs or activities conducted by any Executive agency, the plainly more far-reaching language Congress employed in § 504(a) itself." *Lane,* 518 U.S. at 192–93 (quotations omitted). The same difference is present in § 508, which requires action by "each Federal department or agency." 29 U.S.C. § 794d(a)(1)(A). Thus, the same reasoning applicable to § 504 claims in *Lane* is applicable to § 508 claims here.  Sovereign immunity applies and Plaintiffs' claims for monetary damages must be dismissed.

*Swafford v. Nicholson*,  2010 WL 3397341 at *1 (footnote converted to text).  In light of

Plaintiff's inability to identify an express waiver of sovereign immunity for damages based on an

asserted violation of Section 508, Plaintiff cannot obtain monetary relief from under Count One

of the Complaint (his Section 508 claim) and such prayer should be dismissed or stricken.

**C. Plaintiff's Failure to Accommodate Claim (Count II) Fails Because He Cannot Show that Defendants Failed Reasonably to Accommodate His Disability**

Plaintiff alleges that the agency failed to accommodate him by not providing him with a manner to access agency documents and emails while he was teleworking, by failing to provide him with out-of-town training, and by otherwise failing to provide him with access to the information and services described in the Complaint.  Complaint, ¶ 68.  Throughout his employment, the Agency has provided Plaintiff with numerous reasonable accommodations for his blindness in order to assist him in performing the essential functions of his job.  The Agency has provided Plaintiff with a private office, teleworking, additional computers and laptops, assistive technology such as JAWS and Kurzweil, access to numerous Office of Information Technology ("OIT") personnel to assist with the technology, a significantly reduced workload, and assistance from his supervisors and colleagues.  *Exhibit 2* – Castelli Affidavit, ¶¶ 7-11.

Under the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq., federal employers are required to provide disabled employees with reasonable accommodations.  *See* 29 U.S.C. § 794(a). Specifically, pursuant to applicable regulations, an agency is required "to make reasonable accommodations to the known physical or mental limitations" of an employee with a "disability." 42 U.S.C. § 12112; 29 C.F.R. § 1630.9(a); 29 C.F.R. § 1614.203(b) (incorporating ADA regulations as Rehabilitation Act regulations applicable to agencies).

To establish a prima facie case of discrimination under the Rehabilitation Act for failure to accommodate, Plaintiff must show "(1) that [he] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [his] disability; (3) that with reasonable accommodation [he] could perform the essential functions of the position; and

(4) that the employer refused to make such accommodations." *Stewart v. St. Elizabeths Hosp.*, 593 F. Supp. 2d 111, 113 (D.D.C. 2009), *affirmed* 589 F.3d 1305, 1308 (DC Cir. 2010).

Plaintiff cannot satisfy that standard.

### 1.     The Agency has permitted Plaintiff to telework since 2007.

Plaintiff alleges that he was continued to be permitted to telework from home in spite of the fact that he could not access the Agency's network remotely, and was thus cut off from his colleagues.  Complaint, ¶¶ 30-38.  Plaintiff, however, also states that the Agency ultimately developed a solution to his remote access to the Agency's network in early 2012, prior to this litigation.  Complaint, ¶ 36.  Because the Agency developed a solution to plaintiff's issues regarding remote access to the Agency's network before he filed suit, there is no unremedied adverse employment action and no failure to accommodate on the part of the Agency.

Assuming for the purposes of this motion that Plaintiff's allegations regarding telecommuting qualify as adverse actions, the issue whether an employer can cure a violation of Title VII and thereby avoid liability for the violation was addressed by the DC Circuit in *Taylor v. Small,* 350 F.3d 1286, 1294 (D.C. Cir. 2003).   In *Taylor*, the court concluded that an employer may cure an adverse employment action before that action is the subject of litigation, thereby negating an adverse employment action when the suit is filed.  The court reasoned that permitting employers the opportunity to correct workplace wrongs prior to litigation is the objective of the EEO process.  *Id.*  If a plaintiff were permitted a right to sue even if his or her employer had corrected the grievance, there would be absolutely no incentive for employers to make adjustments for past conduct during the EEO process.  *Id.* (citing *Martini v. Fannie Mae*, 178 F.3d 1336, 1338 (D.C. Cir. 1999) (remanding to district court with instructions to dismiss plaintiff's suit as untimely because "Title VII requires complainants to wait 180 days before

suing in federal court so that the Commission may informally resolve as many charges as possible"). The Agency provided Plaintiff with training opportunities.

### 2.    Out Of Town Training

Plaintiff further alleges that the Agency failed to accommodate him by not allowing him to participate in an out-of-town training, at least in part because he cannot use the Agency's FedTraveler system independently.  Complaint, ¶ 27-29.  In addition, he alleges that he cannot complete the Agency's Virtual Learning Center ("VLC") online training courses in the same manner as sighted users.  Complaint, ¶ 39-43.  Plaintiff was provided with assistance to use the Agency's travel system and participated in an out-of-town training on September 19-23, 2011. *Exhibit 3* – O'Rourke Affidavit, ¶¶ 15-21, 23.  With respect to the online training, Mr. Leiterman concedes that the agency has provided him with an alternative method of presentation for the VLC training courses.  Complaint, ¶ 42.

On June 8, 2011 and again on August 2, 2011, Mr. Leiterman's supervisor offered him an opportunity to attend a CBP seminar in Philadelphia on September 12-16, 2011.  *Exhibit 3* – O'Rourke Affidavit, ¶ 15.  In accordance with federal travel regulations, 41 C.F.R. 301-73.101, the agency uses the FedTraveler travel system to plan, book, track, approve, and request reimbursement for travel services for managing federal employees' official travel.  At the time, the FedTraveler system had recently been implemented at the agency and, as with any new system, there was some uncertainty regarding the steps and procedures in making travel arrangements.  *Exhibit 3* – O'Rourke Affidavit, ¶ 16-17.  Due to Mr. Leiterman's inability to independently access FedTraveler's functions, his supervisor, Ieva ORourke, in addition to also assisting Mr. Leiterman, tasked another employee with assisting Mr. Leiterman in planning and booking his upcoming travel.  *Exhibit 3* – O'Rourke Affidavit, ¶ 18.   In addition, as Mr. Leiterman did not have a government credit card, he was provided with a cash advance of $648.48 to cover hotel, meals, and incidental expenses.  *Exhibit 3* – O'Rourke Affidavit, ¶ 19.

Ultimately, Mr. Leiterman elected not to attend the September 12-16 seminar.  *Exhibit 3 –*
*O'Rourke Affidavit*, ¶ 22.  He was, however, subsequently approved and did attend the seminar
the following week, September 19-23, 2011.  *Exhibit 3 – O'Rourke Affidavit*, ¶ 23.

### 3.  Other Training

With respect to Plaintiff's access to the Agency's online training system, the Agency's
uses software called the VLC.  Complaint, ¶ 39-43.  Typical courses include Safeguarding
Classified National Security Information, Privacy at DHS: Protecting Personal Information, IT
Security Awareness, and Annual Integrity Awareness.  *Exhibit 4 - Aiken Affidavit* ¶ 24.

Where there are gaps, alternative methods of presentation have been offered for
employees who cannot access the software, including blind employees such as Plaintiff.  *Exhibit*
*2 – Castelli Affidavit*, ¶ 16.  Employees who are not able to access the VLC are not penalized or
otherwise disciplined for failing to take the required courses.  *Exhibit 2 – Castelli Affidavit*, ¶ 15.
Mr. Leiterman admits that, throughout his tenure with the agency, he has completed VLC
courses either through the online system or he was provided with the information through an
alternative method of presentation.  Complaint, ¶ 42.  In addition, he has not alleged that he has
been penalized or otherwise disciplined for failing to take the VLC courses or that not having
taken the courses has otherwise resulted in any actual, tangible adverse employment
consequence.

### 4.     The Agency Provided Accommodations With Respect to Technology

Plaintiff alleges that in 2010, the Agency began pushing software security updates to his
computer, causing his computer to crash and requiring him to reconfigure settings to
accommodate the assistive technology on his computer and troubleshoot computer problems.  He
further states that as a result of the Agency's implementation of the Windows 7 operating

system, he was required to spend a substantial amount of time testing the system and identifying accessibility issues. Complaint, ¶ 21-24.  Plaintiff also alleges that the Agency's decision to not provide him with a desktop computer at home constitutes a failure to accommodate, Complaint, ¶ 53, and that his telephone was not accessible as he could only answer or make calls. Complaint, ¶ 25.

Employees are not entitled to an accommodation of their choice but rather the employer must provide a *reasonable* accommodation as is necessary to enable him to perform the essential functions of his job.  *See Barth v. Gelb*, 2 F.3d 1180, 1186 (D.C. Cir. 1993) (concluding that "a reasonable accommodation is one employing a *method of accommodation* that is reasonable in the run of cases"); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) (en banc) (applying *Barth's* analysis under the Rehabilitation Act to the Americans with Disabilities Act); *Carter v. Bennett*, 840 F.2d 63, 67 (D.C. Cir. 1988) (upholding finding that Department of Education did not fail reasonably to accommodate blind employee when it provided some, but not all requested, special equipment to perform the essential duties of his job).  Moreover, as explained in the appendix to the ADA regulations, "the employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." 29 C.F.R. pt. 1630, app. at 377 (2004).  *See also* 29 C.F.R. § 1630.2(o)(3) (stating that the employer must make a reasonable effort to determine the appropriate accommodation).  Determining an appropriate accommodation, however, requires a flexible, interactive process that involves a good faith effort on behalf of both the employer and the disabled employee. 29 C.F.R. § 1630.2(o)(3).  The Microsoft Windows 7 operating system has been determined to be the

product which "best meets" both business needs and accessibility standards.  *Exhibit 4* – Aiken Affidavit, ¶ 22.

Once notified of the issues with Plaintiff's computer, the Agency, through Plaintiff's supervisors, as well as numerous OIT personnel, engaged in extensive discussions, with and without Plaintiff, attempting to determine the cause of the computer issues, possible resolutions, and implementation of solutions that are in keeping with the Agency's IT security requirements. *Exhibit 4* – Aiken Affidavit, ¶ 6-16; *Exhibit 5* - Aiken EEO Declaration at 7.   Until a full remedy could be determined, Plaintiff was provided with an additional computer for the office and a new laptop for his home.  *Exhibit 4* -Aiken Affidavit, ¶ 7-8, 13.   In addition, Plaintiff requested and was approved to have the Windows 7 system installed on his computers as an agency tester. *Exhibit 4* - Aiken Affidavit, ¶ 7.  With respect to the telephone, up until recently, Plaintiff repeatedly refused the Agency's offers to replace his phone with one with static keys so that he could access the phone's additional functions.  *Exhibit 4*- Aiken Affidavit, ¶ 18.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss this action or, with respect to any claims that can be said to state a claim for relief, enter partial summary judgment in favor of the Defendants.

Respectfully submitted,

RONALD C. MACHEN JR., DC Bar #447889
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, DC Bar #924092
Chief, Civil Division

By: _____
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC  20530
Tel: (202) 252-2536
Email:  mark.nebeker@usdoj.gov

OF COUNSEL:

FRISLANDA GOLDFEDER
Attorney
Office of Chief Counsel
U.S. Customs and Border Protection

Dated: November 15, 2013

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MICHAEL LEITERMAN** | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| **v.** | )   Civil Action No. 13-cv-394(CKK) |
| | ) |
| **JANET NAPOLITANO, Secretary,** | ) |
| **DEPARTMENT OF HOMELAND** | ) |
| **SECURITY** | ) |
| | ) |
| *Defendant* | ) |

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

(1)     Plaintiff Leiterman is an attorney employed by the Department of Homeland

Security's U.S. Customs and Border Protection.  Complaint, ¶ 1; *Exhibit 1* – Leiterman EEO

Declaration at 1.

(2)     Plaintiff began working for the agency in August 2006 in the Office of

International Trade's Office of Entry Process and Duty Refunds,  Complaint, ¶ 1; *Exhibit 1* –

Leiterman EEO Declaration at 1.

(3)     Plaintiff is currently assigned to the Office of Privacy and Diversity in the Privacy

Act Policy and Procedures Branch (Privacy Branch) conducting privacy impact assessments

(PIAs), System of Record Notices (SORNs), and granting confidentiality requests for U.S.

importers on information from vessel manifests.  *Exhibit 2* – Castelli Affidavit, ¶ 2-3.  The

Privacy Act Policy and Procedures Branch (Privacy Branch) was previously within the Office of

International Trade; but it was transferred to the Office of Privacy and Diversity in late 2013, and

Privacy Branch employees are currently on long term details to the Office of Privacy and

Diversity.  Mr. Leiterman was assigned to the Privacy Branch in early 2013 and is currently on the long term detail.  *Id.*

(4)     Plaintiff has been assigned a private office equipped with a scanner, telephone, and computer containing the assistive technology for vision impaired individuals that he specifically requested, including the latest versions of the JAWS and Kurzweil software, and Adobe Acrobat.  *Exhibit 2* – Castelli Affidavit, ¶ 7.

(5)     JAWS is an assistive technology that can read aloud information presented on a computer screen, including text in documents, websites, e-books, and other formats. *See* www.freedomscientific.com/products/fs/jaws-product-page.asp.  *Exhibit 2* – Castelli Affidavit, ¶ 7.

(6)     Kurzweil is an assistive technology that uses advanced optical character recognition (OCR) to scan and read printed or electronic text so that it is accessible to people who are blind or visually impaired.  *See* http://www.kurzweiledu.com/kurzweil-1000-v13-windows.html *Exhibit 2* – Castelli Affidavit, ¶ 7.

(7)     In 2007, Plaintiff requested and was approved to telework two days a week as a reasonable accommodation.  Complaint, ¶31; *Exhibit 2* – Castelli Affidavit ¶ 8; *Exhibit 3* – O'Rourke Affidavit, ¶ 8.

(8)     From early 2011, the Agency explored ways to provide remote access to the Agency's network in a manner that met the Agency's IT security requirements and was accessible to Mr. Leiterman.  *Exhibit 4* – Aiken Affidavit, ¶ 6-16.

(9)     On or about February 2012, Mr. Leiterman was provided with the software to remotely access the Agency's network.  *Exhibit 4* – Aiken Affidavit, ¶ 16.

(10)     By May 4, 2011, Mr. Leiterman had a laptop containing the assistive technology

he had requested and a desktop with a Windows test version, also containing the assistive

technology he had requested, that was operable and was not experiencing crashes.  *Exhibit 4 –*

*Aiken Affidavit*, ¶ 13.

(11)     On June 8, 2011 and again on August 2, 2011, Mr. Leiterman's supervisor offered

him an opportunity to attend a CBP seminar in Philadelphia on September 12-16, 2011.  *Exhibit*

*3 –* O'Rourke Affidavit, ¶ 15.

(12)     In accordance with federal travel regulations, 41 C.F.R. 301-73.101, the agency

uses the FedTraveler travel system to plan, book, track, approve, and request reimbursement for

travel services for managing federal employees' official travel.  *Exhibit 3 –* O'Rourke Affidavit,

¶ 16.

(13)     At the time, the FedTraveler system had recently been implemented at the agency

and, as with any new system, there was some uncertainty regarding the steps and procedures in

making travel arrangements.  *Exhibit 3 –* O'Rourke Affidavit, ¶ 17.

(14)     Due to Mr. Leiterman's inability to independently access FedTraveler's functions,

his supervisor, Ieva O'Rourke, in addition to also assisting Mr. Leiterman, tasked another

employee with assisting Mr. Leiterman in planning and booking his upcoming travel.  *Exhibit 3*

*–* O'Rourke Affidavit, ¶18.

(15)     In addition, as Mr. Leiterman did not have a government credit card, he was

provided with a cash advance of $648.48 to cover hotel, meals, and incidental expenses.  *Exhibit*

*4 –* O'Rourke Affidavit, ¶ 19.

(16)     Ultimately, Mr. Leiterman elected not to attend the September 12-16 seminar.

*Exhibit 3 –* O'Rourke Affidavit, ¶ 22.

(17)     Plaintiff was provided with assistance to use the Agency's Fedtraveler system and participated in an out-of-town training on September 19-23, 2011.  *Exhibit 3* – O'Rourke Affidavit, ¶¶ 16, 18, 23.

(18)     The Agency's online training system is the Virtual Learning Center (VLC). Complaint, ¶ 39-43; *Exhibit 4* - Aiken Affidavit, ¶ 23.

(19)     Typical VLC courses include Safeguarding Classified National Security Information, Privacy at DHS: Protecting Personal Information, IT Security Awareness, and Annual Integrity Awareness.  *Exhibit 4* - Aiken Affidavit, ¶ 24.

(20)     Plaintiff has received the information from VLC training courses in alternate forms of presentation.  Complaint, ¶ 42.

(21)     Employees who are not able to access the VLC are not penalized or otherwise disciplined for failing to take the required courses.  *Exhibit 2* – Castelli Affidavit, ¶ 15.

(22)     Plaintiff requested and was approved to have the Windows 7 system installed on his computers as an agency tester.   *Exhibit 4* - Aiken Affidavit, ¶ 7.

(23)     By April 2010, Plaintiff submitted his application for promotion to the GS-14 level.  Complaint, ¶ 45; *Exhibit 1* – Leiterman EEO Declaration at 13.

(24)     In May 2010, Plaintiff withdrew his application for promotion to the GS-14 level. *Exhibit 1* – Leiterman EEO Declaration at 13.

(25)     On June 3, 2011, Plaintiff contacted an EEO counselor alleging that he had been discriminated against on the basis of his physical disability by the Agency's failure to provide accessible electronic and information technology; denying his request for a Blackberry and desktop for his home use; denied a promotion to the position of CBP Attorney Advisor, GS-14, and requiring him to repay an erroneous pay increase; requiring him to troubleshoot computer

issues and address his reasonable accommodation needs in his cubicle and discussed the

possibility that he would file an EEO complaint with employees who did not have a need to

know; denied the opportunity to attend a training seminar during the week of September 12,

2011 because he was unable to make travel arrangements through FedTraveler; and that the

training materials for the seminar were not made accessible in an electronic format.  Complaint,

¶5; *Exhibit 6* – EEO Acceptance Letter.


Respectfully submitted,

RONALD C. MACHEN JR., DC Bar #447889
United States Attorney
for the District of Columbia


DANIEL F. VAN HORN, DC Bar #924092
Chief, Civil Division


By: _____
       W. MARK NEBEKER, DC Bar #396739
       Assistant United States Attorney
       555 4th Street, N.W.
       Washington, DC  20530
       Tel: (202) 252-2536
       Email:  mark.nebeker@usdoj.gov