**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MICHAEL LEITERMAN,                    :

       Plaintiff,                    :

    v.                    :     Civil Action No.: 1:13-cv-00394-CKK

JANET NAPOLITANO, *et al*.,                    :

    Defendants.                    :

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

Joseph B. Espo, D.C. Bar No. 429699
Laura Abelson
BROWN, GOLDSTEIN & LEVY LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202
T:  (410) 962-1030
F:  (410) 385-0869
jbe@browngold.com
labelson@browngold.com

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... iii

SUMMARY OF FACTS ........................................................................................... 2

ARGUMENT ............................................................................................................ 4

I.    Standard for decision on Defendant's Motion ......................................... 4

II.   Mr. Leiterman has Stated a Claim under Section 508 of the Rehabilitation Act.... 5

    A.    Section 508 requires that CBP procure and implement electronic information technology that is accessible to the blind. .................................... 5

    B.    There is a private right of action under Section 508. ....................................... 8

    C.    Mr. Leiterman's Section 508 count is not precluded by Section 501. .............. 9

    D.    Even if there is no independent private right of action under 508, Section 501 incorporates Section 508's specific requirement of equal access to electronic and information technology for federal employees with disabilities. ........................................................................................ 10

        1.    Section 508's specific provisions supplement Section 501's more general provisions when both are applicable. ........................................... 11

        2.    If Section 501 is Mr. Leiterman's sole remedy against CBP, Section 501 necessarily incorporates the mandates of Section 508.......... 14

        3.    Plaintiff has made no claim for money damages under Section 508, but can obtain damages under Section 501............................................ 16

III.   Defendant is not entitled to summary judgment on Mr. Leiterman's failure to accommodate claim. ........................................................................... 16

    A.    Mr. Leiterman's claim is broader than defendant acknowledges and he is entitled to discovery .................................................................................. 17

    B.    Mr. Leiterman's telework accommodation failed to provide him full access to CBP's computer network............................................................. 19

    C.    The CBP Virtual Learning Center is inaccessible to blind users................... 20

    D.    Mr. Leiterman was prevented from attending an out-of-town training because of his disability. .............................................................................. 21

    E.    CBP's other technology policies and practices discriminated against Mr. Leiterman. ............................................................................................ 22

    F.    The pattern of failure to provide accessible technology continues................ 23

    G.    CBP's alleged accommodations for Mr. Leiterman do not cure its discriminatory practices. .......................................................................... 24

IV.   Mr. Leiterman Exhausted his Administrative Remedies ....................... 26

CONCLUSION............................................................................................................... 28

REQUEST FOR HEARING.............................................................................................. 28

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Rice*,
    531 F.3d 936 (D.C. Cir. 2008) .......................................................................... 11

*Alexander v. Choate*,
    469 U.S. 287 (1985) ........................................................................................ 25

*Am. Council of Blind v. Astrue*,
    C 05-04696 WHA, 2009 WL 3400686 (N.D. Cal. Oct. 20, 2009) ........................... 9

*Am. Council of the Blind v. Paulson*,
    525 F.3d 1256 (D.C. Cir. 2008) ........................................................................ 12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................... 4, 5, 24

*Anderson v. Zubieta*,
    180 F.3d 329 (D.C. Cir. 1999) .......................................................................... 27

*Blackman v. District of Columbia*,
    456 F.3d 167 (D.C. Cir. 2006) .................................................................... 4, 15

*Broome v. W.*,
    CIV. AMD 95-3587, 1995 WL 855450 (D. Md. Apr. 30, 1996) ............................... 27

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .......................................................................................... 5

*First Chicago Int'l v. United Exchange Co., Ltd.*,
    836 F.2d 1375 (D.C. Cir. 1988) .................................................................... 4, 18

*Harvey v. Mohammed*,
    841 F. Supp. 2d 164 (D.D.C. 2012) ................................................................... 14

*HCSC-Laundry v. United States*,
    450 U.S. 1 (1981) ..................................................................................... 11, 13

*Howard v. Gutierrez*,
    571 F. Supp. 2d 145, 153 (D.D.C. 2008) ........................................................... 27

*Kim v. United States*,
    632 F.3d 713 (D.C. Cir. 2011) .......................................................................... 18

*Laffey v. Northwest Airlines*,
    567 F.2d 429 (D.C. Cir.1976) ........................................................................... 27

*Moore v. Chertoff*,
    437 F.Supp.2d 156 (D.D.C. 2006) ..................................................................... 27

*Palmer v. Kelly*,
    17 F.3d 1490 (D.C. Cir. 1994) .......................................................................... 27

*Pantazes v. Jackson*,
    366 F. Supp. 2d 57 (D.D.C. 2005) ............................................................. 4, 9, 24

*Pleasants v. Allbaugh*,
   185 F.Supp.2d 69 (D.D.C. 2002) ........................................................... 27

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
   132 S. Ct. 2065 (2012) .................................................................. 11, 13

*Richardson v. Gregory*,
   281 F.2d 626 (D.C. Cir. 1960) ............................................................ 14

*Solomon v. Vilsack*,
   628 F.3d 555 (D.C. Cir. 2010) ............................................................ 12

*Stewart v. St. Elizabeths Hosp.*,
   593 F. Supp. 2d 111 (D.D.C. 2009) ..................................................... 17

*Taylor v. F.D.I.C.*,
   132 F.3d 753 (D.C. Cir. 1997) ......................................................... 4, 18

*Taylor v. Small*,
   350 F.3d 1286 (D.C. Cir. 2003) ................................................. 10, 25, 26

*United States v. Chase*,
   135 U.S. 255 (1890) ....................................................................... 11

*Wash. Post Co. v. United States Dep't Health and Human Servs.*,
   865 F.2d 320 (D.C. Cir. 1989) ............................................................. 4

*West v. Gibson*,
   527 U.S. 212 (1999) ....................................................................... 24


**Statutes**

29 U.S.C. § 701(b)(1)                               12

29 U.S.C. § 701(b)(2)                               12

29 U.S.C. § 701(c)(1) – (3) (1998)                  12

29 U.S.C. § 794                                      10

29 U.S.C. § 794a                                  24

29 U.S.C. § 794a(a)(1)                              16

29 U.S.C. § 794d (1)(A)                            7

29 U.S.C. § 794d(a)(1)(A)(i)            10, 14, 15, 19

29 U.S.C. § 794d(a)(1)(A)(i) (2000)          12

29 U.S.C. § 794d(f)(2)                            8

42 U.S.C. § 12101                                  6

Rehabilitation Act of 1973, 29 U.S.C. §§ 791 & 794d       1, 2

The Architectural Barriers Act of 1968, 42 U.S.C. § 4151, Sections 501, 503, and 504 of the
   Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq*.      6

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................ 4

Fed. R. Civ. P. 56 ..................................................................................... 4

Fed. R. Civ. P. 56(d) .............................................................................. 18

**Regulations**

*29 C.F.R.* § 1614.407 ............................................................................. 9

29 C.F.R. § 1614.407(b) ........................................................................ 16

29 C.F.R. 1630 ....................................................................................... 19

**Other Authorities**

144 Cong. Rec. S4258 (May 5, 1998) (statement of Senator Tom Harkin) ................................. 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MICHAEL LEITERMAN,                          :

      Plaintiff,                          :

      v.                          :          Civil Action No.: 1:13-cv-00394-CKK

JANET NAPOLITANO, *et al.*,                          :

      Defendants.                          :

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

The facts of this case demonstrate that over a period of many years Michael Leiterman's employer, the Customs and Border Protection division of the Department of Homeland Security ("CBP"), has consistently discriminated against him by failing to provide him with accessible information technology or any other reasonable accommodations for his disability as required by the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 & 794d.  In its Motion, CBP attempts to reduce Mr. Leiterman's Complaint into unrelated episodic problems.  CBP's Motion misses the proverbial forest of inaccessible technology provided to Mr. Leiterman and the pattern of failing to accommodate Mr. Leiterman for the trees of specific complaints.  The law, however, does not entitle CBP  to shirk its responsibility under Sections 501 and 508 of the Rehabilitation Act to develop, procure, and implement accessible technology and to provide reasonable accommodations, by providing inadequate back-end fixes, some of which have taken years to implement.  By its conduct CBP has discriminated against Mr. Leiterman on the basis of his blindness for almost his entire tenure at the agency.

Like the Motion itself, CBP's exhibits present an overly narrow view of the agency's responsibilities to employees with disabilities and fails to acknowledge the overarching

deficiencies in its technology procurement and implementation policies.  The wide-angle view of

this case shows that there are many material disputed facts related to CBP's utter failure to

comply with Section 508 in its decisions regarding the purchasing, design, and implementation

of information technology and its concurrent failure to comply with Section 501.  Mr. Leiterman

is entitled to discovery on these issues.

Because Mr. Leiterman has stated a claim on which relief may be granted, because CBP

is not entitled to judgment as a matter of law, because there are disputed material facts, and

because Mr. Leiterman is entitled to and needs certain discovery before responding to some of

CBP's arguments, CBP's Motion should be denied.

## SUMMARY OF FACTS

Michael Leiterman is a blind lawyer who has worked for CBP since August 2006.

Compl. ¶ 1; Ex. 1, Leiterman Declaration ¶ 1.  As a blind computer user, he uses screen access

software that converts digital information to synthesized speech.  Compl. ¶ 12; Defendant's

Statement of Material Facts Not in Dispute ("Def. SOF"). The brand of screen access software

Mr. Leiterman uses is called "JAWS," which is an "assistive technology" that can read aloud

information presented on a computer screen.  http://www.freedomscientific.com/products/fsm

/jaws-product-page.asp).  Compl. ¶ 12; Def. SOF ¶ 5. JAWS can read text in documents,

websites, e-books, and other formats.  Compl. ¶ 12; Def. SOF ¶ 5. Although JAWS can read all

text that is on a computer screen, there are ways in which technology must be made compatible

with it. Comp. ¶ 17; Plaintiff's Response to Defendant's Statement of Material Facts Alleged

Not to be in Dispute and Counter Statement of Undisputed Material Facts ("Pl. SOF") ¶¶ 32-33.

For example, images, buttons, or internet links must be programmed to include alt-text

"descriptions" for JAWS to be able to read them to a blind user.  *Id*.  Unless these descriptions

are included, JAWS cannot discern the content of the links or images.  Compl. ¶ 17.

Throughout Mr. Leiterman's tenure at CBP, Mr. Leiterman has been consistently confronted with technological barriers that make it impossible for him to complete many of the tasks expected of him as a CBP employee.  Mr. Leiterman spent at least 2 years cut off from the CBP computer network during his telework days. Compl. ¶¶ 33-36; Pl. SOF ¶¶ 36-38; Def. SOF ¶ 9.  He cannot use CBP's travel booking software.  Compl. ¶¶ 27-29; Pl. SOF ¶ 47. He is unable to access the software CBP uses for in-house required trainings. Compl. ¶¶ 39-43; Pl. SOF ¶ 48. He cannot use the vast majority of the functions on his telephone. Compl. ¶ 25; Pl. SOF ¶ 42.  He regularly receives inaccessible documents from colleagues within the agency. Pl. SOF ¶ 64.  He cannot even review his own performance evaluations or update his security credentials without assistance. Pl. SOF ¶¶ 43, 63.

Mr. Leiterman continues to face these and other barriers because CBP consistently implements information technology that is incompatible with JAWS and therefore inaccessible to blind users.  CBP continues to do so despite the requirement in Section 508 of the Rehabilitation Act that the federal government not "develop, procure, maintain, or use" inaccessible information technology.  As discussed below at greater length, the back-end "solutions" offered by CBP to address its inaccessible technology deprive Mr. Leiterman of the ability to participate in the workplace in the same way as his sighted colleagues.

The documents produced by CBP in its Investigative File demonstrate that CBP knew that many of the technologies Mr. Leiterman was required to use were inaccessible. Pl. SOF ¶¶ 27, 28, 30, 31, 36, 45, 48, 65.  These documents also demonstrate that CBP has a practice of ignoring Section 508 when choosing technology for the agency.  Had CBP used accessible technologies, Mr. Leiterman would have been able to complete each of his work tasks independently, at the same time as his sighted colleagues.

**ARGUMENT**

**I.     Standard for decision on Defendant's Motion**

Dismissal of a claim under Fed. R. Civ. P. 12(b)(6) is only appropriate when, after taking the material allegations of the complaint as admitted and construing them in the plaintiff's favor, a court finds that the plaintiff has failed to allege all the material elements of his cause of action. *Taylor v. F.D.I.C.*, 132 F.3d 753, 761 (D.C. Cir. 1997).

Under Fed. R. Civ. P. 56, a motion for summary judgment shall not be granted unless the pleadings, depositions, answers to interrogatories on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An added measure of rigor and caution is appropriate in applying the summary judgment standard in employment discrimination cases because courts must bear in mind "that a factfinder could infer intentional discrimination even in the absence of crystal-clear documentary evidence filed at the summary judgment stage." *Pantazes v. Jackson*, 366 F. Supp. 2d 57, 65 (D.D.C. 2005).

In considering summary judgment, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor.  *Wash. Post Co. v. United States Dep't Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). Moreover, credibility determinations and the weighing of evidence and the drawing of inferences from evidence are for the factfinder. *Liberty Lobby*, 477 U.S. at 255.

When deciding a case in which a party is seeking summary judgment, particularly at the outset of a case, care must be taken that the opposing party has a chance to pursue reasonable discovery.  *Taylor v. FDIC*, 132 F.3d at 765 (quoting *First Chicago Int'l v. United Exchange Co., Ltd.,* 836 F.2d 1375, 1380 (D.C. Cir. 1988).  Indeed, Supreme Court cases make that clear.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment appropriate only "after adequate time for discovery"); *Liberty Lobby*, 477 U.S. at 257.

Measured against these standards it is clear that Defendant's Motion should be denied.

## II. Mr. Leiterman has Stated a Claim under Section 508 of the Rehabilitation Act

Defendant's argument that Mr. Leiterman may not proceed on his Section 508 count misunderstands both the law and Mr. Leiterman's claim.  As set out below, Mr. Leiterman is entitled to either proceed on an independent Section 508 claim or one that is incorporated into his Section 501 claim.

### A. Section 508 requires that CBP procure and implement electronic information technology that is accessible to the blind.

The enactment of the current version of Section 508 in 1998 recognized that advances in electronic and information technology have changed the lives of all Americans.  Where once we relied on printed text, buttons, and knobs we now rely on electronic text, touch screens, and numeric displays. Technology is now present in nearly every aspect of daily life, from the coffee maker in the morning – to the subway ticket kiosk on the way to work – to the computer, email, and copier in the office – to the "smart" phones we use – to the point of sale machine at the checkout aisle – to the ebook reader by the bed.[1]

---

[1] *See*  U.S. Department of Justice, Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations, Advance Notice of Proposed Rulemaking, Federal Register, Vol. 75, No. 142, 43461-43462 (July 26, 2010) ("DOJ Website ANPRM") (describing the impact of websites in public services, commerce, education, health care, and social life).

Electronic information (input and output) is not inherently visual, aural, or tactile – it is a series of zeros and ones that can be represented in visual, aural, or tactile formats.[2] Thus, electronic technology can be built to be accessible to people with a variety of sensory and communication disabilities, including vision, hearing, manual dexterity, and speech disabilities.    As such, accessible electronic and information technology offers people with disabilities an unprecedented opportunity for mainstream participation in all aspects of community life. Instead of being forced to wait for special Braille copies of print documents, a blind employee can access electronic text audibly through a screen reader, like JAWS.  Instead of having to request a sign language interpreter for a training, a deaf person can use a captioned video.[3]

When technology is inaccessible, however, its pervasiveness threatens those with disabilities with increasing exclusion, segregation and unequal opportunity.  As knobs and buttons are replaced with visual-only touchscreens, blind people are excluded. As in-person training with interpreters is replaced with audio-based online webinars, deaf people are excluded. As human staff is replaced with inaccessible websites, kiosks, and other equipment, people with many disabilities will be unable to find help to get access.

At the same time that technology has changed our lives, civil rights laws have changed the legal framework surrounding disabilities.  The Architectural Barriers Act of 1968, 42 U.S.C. § 4151, Sections 501, 503, and 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, expressed

---

[2] CAST, Teaching Every Student,
http://www.cast.org/teachingeverystudent/ideas/tes/chapter3_9.cfm

[3] Accessibility features of technology, like accessibility features of buildings, are more easily, quickly, and cost-effectively incorporated in the initial development of technology products, rather than through after-the-fact retrofitting.  Financial Factors in Developing a Web Accessibility Business Case for Your Organization, WEB ACCESSIBILITY INITIATIVE, http://www.w3.org/WAI/bcase/fin.html.

Congress' and the country's commitment to civil rights for people with disabilities.  Where it was once assumed that people with disabilities would be in the shadows, we now are mandated by law to assume that individuals who use wheelchairs, blind people, deaf people, and other people with disabilities will be part of our daily lives as citizens and as workers.

In 1998, Congress amended the Rehabilitation Act of 1973 to revise Section 508 to address the changing use of technology in the workplace.  Section 508 mandates that:

> When developing, procuring, maintaining, or using electronic and information technology, each Federal department or agency . . . shall ensure, unless an undue burden would be imposed on the department or agency, that the electronic and information technology allows, regardless of the type of medium of the technology—[that Federal employees] have access to and use of information and data that is comparable to the access to and use of the information and data by [those without disabilities.]

29 U.S.C. § 794d (1)(A).  Section 508 sought "to ensure that people with disabilities will have *equity* in the use of electronic and information technology," Access Board Electronic and Information Technology Access Advisory Committee Final Report, at 1[4] (emphasis added), and, therefore, to allow them to perform their job functions.  144 Cong. Rec. S4258 (May 5, 1998) (statement of Senator Tom Harkin).  Section 508 therefore requires CBP and other government agencies to use accessible technology rather than inaccessible technology.  The current version of the law altered the framework of accommodation – a federal employee like Mr. Leiterman should not be required to troubleshoot ineffective technology on a piece-meal basis after he determines that something his agency has developed or procured does not work.  Rather, CBP is required to implement accessible technology from the start, allowing blind employees like

---

[4] Available at http://www.access-board.gov/guidelines-and-standards/communications-and-it/about-the-section-508-standards/background/advisory-committee-final-report.

Mr. Leiterman to work independently and without delay.  CBP's pattern of use of inaccessible information technology flouts these requirements and has prevented Mr. Leiterman from achieving the equity in employment that was the purpose of Section 508.

## B.  There is a private right of action under Section 508.

Section 508 provides that the statute shall be enforced using the administrative procedures applicable to Section 504, and by extension Section 501.  *See* 29 U.S.C. § 794d(f)(2). Although Section 504 does not generally apply to employees of the federal government, the procedures for filing a Section 504 complaint apply to employees in this context because Congress adopted them for enforcement of all Section 508 claims, including those by employees.[5]

For the Department of Homeland Security, the procedures for filing a Section 504 claim are set forth in 6 C.F.R. pt 15.  As CBP acknowledges, 6 C.F.R. pt. 15.70(b), which states "The Department [of Homeland Security] shall process complaints alleging violations of section 504 with respect to employment according to the procedures established by the Equal Employment Opportunity Commission in 29 CFR part 1614" applies to Mr. Leiterman's Section 508 claims. *See* Def.'s Mem. 7 n.1.  Part 1614 of Title 29 of the Code of Federal Regulations encompasses the procedures for filing complaints under Section 501 and those procedures include a comprehensive scheme for resolving federal employees' claims of disability discrimination. That scheme includes administrative remedies and the right to seek relief through a civil action.

---

[5] Defendant's argument to the contrary is plainly overbroad, as Defendant's own memorandum acknowledges that Section 508 contemplates an administrative cause of action.  *See* Def.'s Mem. 7 n.1.

Indeed, 29 C.F.R. § 1614.407, which governs all complaints of disability discrimination for federal sector employees, provides that  "[a] complainant who has filed an individual complaint . . . is authorized under title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court . . . ."

The regulation does not state that only complaints under Section 501 are authorized.  A plain reading of this portion of the regulation demonstrates that *any* individual who is authorized to file an individual complaint under the administrative scheme is also "authorized" "to file a civil action in an appropriate United States District Court."  It would be manifestly unjust to interpret Section 508, which amended the Rehabilitation Act to increase the rights of individuals with disabilities, *see Am. Council of Blind v. Astrue*, C 05-04696 WHA, 2009 WL 3400686 (N.D. Cal. Oct. 20, 2009), to provide a right for federal employees that could not be enforced past the administrative level when all other disability discrimination claims can be brought in a civil action.  This would be an even more absurd result because Section 508, as the Agency concedes, expressly provides a right of civil action to non-employees who find themselves faced with inaccessible technology used by federal agencies. *See* Def.'s Mem. 7.

Moreover, this Court has recognized an independent cause of action under Section 508 in the past.  *See Pantazes*, 366 F. Supp. 2d at 66.  In *Pantazes*, the Court denied defendant HUD's motion for summary judgment where the plaintiff brought claims under both Sections 501 and 508.  The Court therefore should hold that Mr. Leiterman may bring his claims under Section 508 directly.

### C.  Mr. Leiterman's Section 508 count is not precluded by Section 501.

CBP also contends that Mr. Leiterman's Section 508 count must be dismissed because it is precluded by Section 501's "exclusive remedial scheme."  *See* Def.'s Mem. 7-8.  The case law

cited by CBP, however, does not support that proposition.  Instead, the cases CBP cites hold that federal employees alleging employment discrimination based on disability cannot maintain a claim under Section 504 of the Rehabilitation Act, but must instead proceed under Section 501. Section 504 prohibits discrimination by recipients of federal financial assistance, not the federal government itself, and therefore does not apply to federal employees.  As such, these cases rely on reasoning that is manifestly inapplicable to Section 508, which explicitly applies to federal employees. *Compare Taylor v. Small*, 350 F.3d 1286, 1291 (D.C. Cir. 2003) ("Section 504 does not on its face apply to federal employees; rather, it prohibits 'discrimination under any program or activity receiving federal financial assistance or under any program or activity conducted by any Executive agency . . . .' 29 U.S.C. § 794. Employees of the Smithsonian Institution are not participants in or beneficiaries of a 'program or activity conducted by any Executive agency'; they are Government employees.") *with* 29 U.S.C. § 794d(a)(1)(A)(i) (requiring equal access to federally-procured electronic and information technology for "individuals with disabilities who are federal employees").

      **D.  Even if there is no independent private right of action under 508, Section 501 incorporates Section 508's specific requirement of equal access to electronic and information technology for federal employees with disabilities.**

Even if there is no independent private right of action under Section 508, Section 508's specific equal access requirement is incorporated into Section 501's general non-discrimination mandate.  If a federal employee who suffers discrimination based on disability must proceed under Section 501, it necessarily follows that Section 501 incorporates the proscriptions in Section 508, which explicitly apply to federal employees.  Accordingly, Mr. Leiterman's allegations of Section 508 violations by CBP, far from being dismissed, should properly be

subsumed within his cause of action based on Section 501 if the Court holds that there is no

private right of action under Section 508.

### 1. Section 508's specific provisions supplement Section 501's more general provisions when both are applicable.

Among the most elementary canons of statutory interpretation is the proposition that

specific provisions supersede general ones within the same statutory scheme when both operate

on the same object.  As explained recently by the Supreme Court:

> It is an old and familiar rule that, where there is, in the same statute, a particular enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment. This rule applies wherever an act contains general provisions and also special ones upon a subject, which, standing alone, the general provisions would include.

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) (quoting

*United States v. Chase*, 135 U.S. 255, 260 (1890)); *see also HCSC-Laundry v. United States*,

450 U.S. 1, 6 (1981) ("[I]t is a basic principle of statutory construction that a specific

statute…controls over a general provision…, particularly when the two are interrelated and

closely positioned, both in fact being parts of [the same statutory scheme]") (citation omitted).

Section 501 contains a general prohibition against disability discrimination for federal

employers, *see Adams v. Rice*, 531 F.3d 936, 942 (D.C. Cir. 2008) ("Rehabilitation Act section

501 prohibits federal agencies from engaging in employment discrimination against disabled

individuals") (citations omitted), while Section 508 contains the much more specific requirement

that federal departments and agencies, "[w]hen developing, procuring, maintaining, or using

electronic and information technology," "ensure . . . that the electronic and information

technology allows . . . individuals with disabilities who are Federal employees to have access to

and use of information and data that is comparable to the access to and use of the information and data by Federal employees who are not individuals with disabilities."  29 U.S.C. § 794d(a)(1)(A)(i) (2000).

Both Section 501 and Section 508 are part of the same statutory scheme, the Rehabilitation Act of 1973, which has among its stated purposes to ensure that "members of the disabled community [can] live independently and fully participate in society," *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1259 (D.C. Cir. 2008) (citing 29 U.S.C. § 701(b)(1)), and to ensure that "the Federal Government plays a leadership role in promoting the employment of individuals with disabilities."  *Solomon v. Vilsack*, 628 F.3d 555, 564 (D.C. Cir. 2010) (citing 29 U.S.C. § 701(b)(2)). The Rehabilitation Act also explicitly promotes policies of self-determination, inclusion, and integration of persons with disabilities, and the provision of equal access to information for such individuals:

> It is the policy of the United States that all programs, projects, and activities receiving assistance under this chapter…shall be carried out in a manner consistent with the principles of (1) respect for individual dignity, personal responsibility, self-determination, and pursuit of meaningful careers, based on informed choice, of individuals with disabilities; (2) respect for the privacy, rights, and equal access (including the use of accessible formats), of the individuals; (3) inclusion, integration, and full participation of the individuals…

29 U.S.C. § 701(c)(1) – (3) (1998).

Within the overall context of this statutory scheme, with its stated goals of promoting the independence, self-determination, and integration of persons with disabilities, the provision of equal access to information to such individuals, and the leadership role of the Federal Government in the promotion of the employment of persons with disabilities, it is plain that Section 501 (with its broad prohibition of employment discrimination by federal employers on

the basis of disability) is supplemented by Section 508 (with its targeted requirement of equal access to federally-procured electronic and information technology for disabled federal employees) in the limited class of situations in which both Sections 501 and 508 are arguably applicable, namely, when a federal employee is denied access to electronic and information technology by his federal employer. In such situations, "the particular enactment [Section 508] must be operative, and the general enactment [Section 501] must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment." *See RadLAX Gateway Hotel,* 132 S. Ct. at 2071.  In situations where Section 501 and Section 508 both apply, the only reasonable accommodation under Section 501 is accessible technology that complies with Section 508.

Put another way, the general mandate of Section 501 that federal employers not discriminate against their employees on the basis of disability is given more specific, concrete content by the "interrelated and closely positioned" specific mandate of Section 508 that federal employers provide their disabled employees equal access to electronic and information technology, at least  when Section 508 is applicable. *See HCSC-Laundry*, 450 U.S. at 6. An apt analogy is to the tort doctrine of negligence *per se*, in which the general duty of reasonable care is, on occasion, given more concrete content by a specific statute, but only in the limited class of situations in which said statute is applicable.  As recently explained by Judge Lamberth:

> The theory of negligence *per se* is a slight variation on the general negligence standard, pursuant to which a plaintiff may, in some circumstances, rely on a statute or regulation to provide the applicable standard of care. For the statute or regulation to provide the applicable standard of care for the plaintiff's case, the statute or regulation must promote public safety and have been enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred. Additionally, the statute or regulation must not merely repeat the common law duty of reasonable care, but must set forth specific guidelines to govern behavior.

*Harvey v. Mohammed*, 841 F. Supp. 2d 164, 182 (D.D.C. 2012) (citations and quotation marks omitted); *see also Richardson v. Gregory*, 281 F.2d 626, 629 (D.C. Cir. 1960).

Section 508, by its very language, was "enacted to protect persons in the plaintiff's position," *i.e.* disabled employees of federal departments and agencies, and was and is intended "to prevent the type of [discrimination] that occurred", *i.e.* denial of equal access to electronic and information technology. *See Harvey*, 841 F. Supp. 2d at 182; 29 U.S.C. § 794d(a)(1)(A)(i) (mandating that federal departments and agencies, "[w]hen developing, procuring, maintaining, or using electronic and information technology," "ensure . . . that the electronic and information technology allows . . . individuals with disabilities who are Federal employees to have access to and use of information and data that is comparable to the access to and use of the information and data by Federal employees who are not individuals with disabilities"). Thus, akin to negligence *per se*, here the general duty imposed on federal employers not to discriminate on the basis of disability by Section 501 is defined by the specific behavior-governing guideline imposed on these same employers to provide equal electronic and information technology access to their disabled employees by Section 508.

### 2. If Section 501 is Mr. Leiterman's sole remedy against CBP, Section 501 necessarily incorporates the mandates of Section 508.

If Section 501 is Mr. Leiterman's sole vehicle to pursue his claims of disability discrimination against his federal employer, including his failure to accommodate claims, it necessarily follows that Section 501 incorporates Section 508 in situations where a disabled federal employee is alleging that his employer has failed to afford him equal access to federally-procured electronic and information technology. To hold otherwise would be to contravene the plain meaning of Section 508, which clearly applies to federal employees. *See* 29 U.S.C.

§ 794d(a)(1)(A)(i) (mandating that "individuals with disabilities who are Federal employees . . . have access to and use of information and data that is comparable to the access to and use of the information and data by Federal employees who are not individuals with disabilities"); *Blackman v. District of Columbia*, 456 F.3d 167, 176 (D.C. Cir. 2006) ("We start with the plain meaning of the text, looking to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. If the language has a plain and unambiguous meaning, our inquiry ends so long as the resulting statutory scheme is coherent and consistent") (internal citations and quotation marks omitted).  Thus, if CBP is correct that Section 501 is Mr. Leiterman's sole procedural vehicle to vindicate his disability discrimination claims against his federal employer, plain statutory meaning and logic require that Plaintiff's assertions of Section 508 violations are properly contemplated within his Section 501 claim.  Accordingly, the proper procedural mechanism for Plaintiff was to file an internal administrative complaint with his employer pursuant to Section 501, asserting his claims under both Sections 501 and 508.  This is precisely what Mr. Leiterman did.

In the context of this case CBP's suggestion that Mr. Leiterman is attempting to evade the requirement that he exhaust administrative remedies before filing a civil action is puzzling.  As pled (and not challenged) Mr. Leiterman filed an informal agency complaint followed by a formal complaint after receiving his Notice of Right to File a Formal Complaint.  Compl. ¶ 5.  When more than 180 days passed after Mr. Leiterman filed his formal complaint—and after Mr. Leiterman had requested a timely agency decision—but no final agency action was taken, Mr. Leiterman filed his civil case.  Therefore, he exhausted the remedies available to him.[6] *See*

---

[6] If the Court were to determine that Plaintiff must await an actual decision by the agency before filing suit the appropriate remedy would be to dismiss that portion of the case without prejudice so DHS could take its final action.

29 C.F.R. § 1614.407(b) ("A complainant who has filed an individual complaint…is authorized

under…the Rehabilitation Act to file a civil action in an appropriate United States District

Court…[a]fter 180 days from the date of filing an individual or class complaint if an appeal has

not been filed and final action has not been taken").

### 3. Plaintiff has made no claim for money damages under Section 508, but can obtain damages under Section 501.

CBP also "move[s] to dismiss or strike Plaintiff's prayer for damages under Section 508,

as he has failed to invoke any applicable statutory waiver of sovereign immunity."  *See* Def.'s

Mem. 11.  However, Mr. Leiterman has made no claim for monetary damages under Section

508.  *See* Compl. ¶¶ 60-63 (Count I alleging violation of Section 508 but making no mention of

monetary damages); Compl. at 13-15 (generalized prayer for relief encompassing all of Mr.

Leiterman's claims).  Mr. Leiterman now clarifies that any monetary damages he seeks in this

action are pursuant to Section 501, for which Congress unequivocally waived sovereign

immunity and authorized the recovery of damages.  *See* 29 U.S.C. § 794a(a)(1).  Indeed, CBP

expressly concedes in its memorandum that damages are available to Mr. Leiterman for his

Section 501 claim.  *See* Def.'s Mem. 11 n.2 ("If Plaintiff could establish a claim under section

501 of the Rehabilitation Act, he might then secure a damages remedy, but the waiver of

sovereign immunity for such a claim is separate from the remedies available under Section

508.").

### III. Defendant is not entitled to summary judgment on Mr. Leiterman's failure to accommodate claim.

Because CBP is not entitled to judgment as a matter of law, because there are disputed

material facts, and because Mr. Leiterman is entitled to discovery before portions of CBP's

Summary Judgment Motion may be decided, it should be denied in its entirety.  Mr. Leiterman

will address each of these issues below.

CBP first attempts to duck its legal obligations by failing to acknowledge that the only

reasonable accommodation required for Mr. Leiterman is accessible technology that meets the

requirements of Section 508.  It then goes on to ignore many of the facts in its own Investigative

File compiled in response to Mr. Leiterman's EEO Complaint with the agency, which

demonstrates that CBP knowingly procured and implemented inaccessible technology.  These

facts demonstrate that CBP knowingly excluded Mr. Leiterman from participation in the daily

duties required by his position, thereby discriminating against him on the basis of his blindness.

In addition CBP implies that Mr. Leiterman would have had to suffer an "adverse

employment action" to state a claim under Section 501.  Under Section 501, as CBP recognizes,

a plaintiff must allege "(1) that [he] was an individual who had a disability within the meaning of

the statute; (2) that the employer had notice of [his] disability; (3) that with reasonable

accommodation [he] could perform the essential functions of the position; and that the employer

refused to make such accommodations."  Def.'s Mem. at 12 (citing *Stewart v. St. Elizabeths

Hosp.*, 593 F. Supp. 2d 111, 113 (D.D.C. 2009), aff'd 589 F.3d 1305, 1308 (D.C. Cir. 2010)).

A Section 501 plaintiff therefore is not required to demonstrate that he suffered an "adverse

employment action" as that term is defined in the law of Title VII.

### A.  Mr. Leiterman's claim is broader than defendant acknowledges and he is entitled to discovery

CBP relies on several affidavits and related exhibits to argue that the agency

accommodated Mr. Leiterman's disability. However, CBP fails to recognize the breadth of the

claim that Mr. Leiterman filed, that was accepted by CBP for investigation, and that was then

carried forth into this lawsuit. Rather than a series of discrete, unrelated acts, CBP accepted as an

issue the Agency's:

> failure to provide accessible electronic and information technology, in
> violation of Section 501 and 508, and required Complainant to spend time
> assisting the Office of Information and Technology in troubleshooting,
> testing, and correcting CBP's technology[.]

Ex. 2, Letter of Acceptance.  This allegation is broader than the discrete episodes that CBP

describes in its Motion.  CBP's actions demonstrate that the agency has a practice of ignoring the

requirements of Section 508 when it chooses which technology to implement agency-wide.

CBP's own documents, produced in the agency's Report of Investigation in response to

Mr. Leiterman's administrative complaint, demonstrate that CBP knew that at least the Virtual

Learning Center, Windows 7, and security devices for remote access to the CBP network were

not compliant with Section 508, yet the agency chose to use the technology anyway.  Pl. SOF

¶¶ 27, 30, 36, 63, 64.

The evidence CBP has submitted in support of its motion does not entitle it to summary

judgment.  The Court may only rely on documents outside the pleadings if all parties have

"notice and an opportunity to present evidence in support of their respective positions."  *Kim v.*

*United States*, 632 F.3d 713, 719 (D.C. Cir. 2011).  This includes "both a reasonable opportunity

to present all material made pertinent to such a motion by Rule 56 and a chance to pursue

reasonable discovery."  *See Taylor v. F.D.I.C.*, 132 F.3d at 765 (citing *First Chicago Int'l v.*

*United Exchange Co., Ltd.*, 836 F.2d at 1380).  At the very least, because Mr. Leiterman's

Complaint alleges that CBP had a systemic practice of choosing to use inaccessible technology

when accessible alternatives were available, the facts that are known entitle Mr. Leiterman to

discovery on CBP's processes for procuring information technology and ensuring that

technology complies with Section 508.  Pursuant to Fed. R. Civ. P. 56(d) Mr. Leiterman has

submitted an affidavit stating that without discovery he cannot adequately respond to CBP's claims that certain software "best met" the government's needs despite its inaccessibility. Ex. 3. For that reason, summary judgment is inappropriate.

Further, the facts concerning the specific incidents CBP identifies in its Motion demonstrate that CBP failed to accommodate Mr. Leiterman. CBP's disregard for Section 508 has required Mr. Leiterman to participate in near-constant trouble shooting of the inaccessible technology in order to make it minimally functional for him. As CBP recognizes in its motion, to be reasonable, an accommodation must be "effective." Def.'s Mem. 17 (citing 29 C.F.R. 1630). The time required to complete these back-end fixes has prevented Mr. Leiterman from participating fully in his role as a lawyer for CBP and has denied him "access to and use of information and data that is comparable to the access to and use of the information and data by Federal employees who are not individuals with disabilities." 29 U.S.C. § 794d(a)(1)(A)(i). They therefore are not effective and thus not reasonable.

### B. Mr. Leiterman's telework accommodation failed to provide him full access to CBP's computer network.

In the Spring of 2007, Mr. Leiterman began telecommuting two days a week as a reasonable accommodation. Def. SOF ¶ 7. In 2009, CBP switched from using an accessible "secure card" that allowed Mr. Leiterman to access the CBP computer network to a system that permitted access to the agency's computer system through either of two inaccessible systems, a "MobiKey" or key fob that both were inaccessible to blind employees. Pl. SOF ¶ 36-37. CBP acknowledged that the MobiKey was inaccessible and never gave Mr. Leiterman one to use. Def. SOF ¶ 37. The Office of Accessible Systems and Technology tested the MobiKey device for compliance with Section 508 in July 2009 and found that it did not comply with the law. *Id*.

The combination of two inaccessible access devices made Mr. Leiterman, unique among teleworkers, unable to access CBPs computers.  When he wanted to e-mail his colleagues or supervisors he needed to do so from his own Hotmail account.  Pl. SOF ¶ 38. He was unable to access documents on the agency's servers while out of the office.  Mr. Leiterman's requested work-around, that he be provided with a Blackberry equipped with adaptive technology so he could receive work related email at his home, was denied.  Pl. SOF ¶ 39.

Although the agency points with great pride to its having fixed Mr. Leiterman's telecommuting problems, it simply ignores the impact the inaccessible technology had on Mr. Leiterman's work performance over the course of more than two years.  There is no doubt that Mr. Leiterman's work suffered as a result of his inability to access his agency's email and computers while telecommuting.  CBP's Motion also ignores Mr. Leiterman's emotional distress at the discrimination he suffered.  This issue, whether seen as part of a larger overall problem or as a discrete instance of discrimination, is not one on which CBP is entitled to summary judgment.

### C.  The CBP Virtual Learning Center is inaccessible to blind users.

The CBP's Virtual Learning Center ("VLC") consists of interactive training modules that require employees to view images and videos and answer questions in order to progress to the next frame.  Upon successfully completing the training, employees may print a certificate.  There is no dispute that the VLC is not compliant with Section 508 of the Rehabilitation Act.  That fact is established in the agency's Investigative File with respect to Mr. Leiterman's discrimination complaint. Pl. SOF ¶¶ 48-50.

In a belated and inadequate effort to overcome the VLC's inaccessibility, CBP has provided Mr. Leiterman with PDF versions of the trainings in recent years.  The PDF versions,

however, provide none of the interactive features of the VLC and include no method for checking the user's knowledge.  Pl.'s SOF ¶ 67.  Thus, while Mr. Leiterman can have someone obtain a certificate for him for completing the VLC courses, he obtains them without the benefit of actually getting the training.

The issue with the inaccessible VLC is not, as CBP would have it, that nobody is disciplined or fails to get a promotion directly for failing to take the VLC classes.[7]  It is that Mr. Leiterman is deprived of the benefit of the training that CBP seems to think is valuable for sighted employees.  The only accommodation that is reasonable for the inaccessible VLC is to make it fully accessible.

To the extent CBP contends the VLC is accessible, it clearly is a fact that is in dispute. Thus, CBP is not entitled to summary judgment on this issue.

### D.  Mr. Leiterman was prevented from attending an out-of-town training because of his disability.

CBP emphasizes that the FedTraveler system all employees must use to book travel arrangements "had recently been implemented at the agency and, as with any new system, there was some uncertainty regarding the steps and procedures in making travel arrangements."  Def.'s Mem. 15.  There was no uncertainty, however, that FedTraveler was inaccessible to Mr. Leiterman.  The documents produced in CBP's Investigative File demonstrate that CBP knew FedTraveler was incompatible with the screen access software used by blind employees. Pl. SOF ¶ 65.  Mr. Leiterman did not, as CBP argues, "elect[] not to attend the September 12-16 seminar."  Rather, because he was required to rely on other employees to make travel

---

[7] As set out in Section III. G, *supra*, under the Rehabilitation Act having inaccessible training is sufficient harm to entitle Mr. Leiterman to prevail in his case even absent proof of discipline or other concrete adverse job action.

arrangements for him, Mr. Leiterman was unable to get his travel arrangements booked in time to make it to the seminar. Pl. SOF ¶ 47. Although Mr. Leiterman did ultimately attend a seminar on September 19-23, that seminar was on a different topic than the September 12 seminar he was originally scheduled to attend. Mr. Leiterman was denied the opportunity to attend the original seminar, on the topic he wished to study, because CBP developed inaccessible software for travel booking.

### E. CBP's other technology policies and practices discriminated against Mr. Leiterman.

In 2007, CBP began requiring frequent software updates to be "pushed" by the agency's information technology ("IT") department to desktop computers used by CBP employees, including Mr. Leiterman. These "pushes" resulted in computer "crashes" that required Mr. Leiterman to reconfigure his computer every time he received a software update. The crashes required significant amounts of time to fix, which prevented Mr. Leiterman from accessing his computer for large portions of time.

The IT department suspended the problematic software updates for a period of time from approximately November 2009 to July 2010, which caused a decrease in new computer problems, but did not resolve the overarching technology issues that continued to cause computer instabilities. Then, in July 2010, Mr. Leiterman's workstation again began receiving updates. After those updates were re-started, Mr. Leiterman was again forced to spend a considerable amount of his scheduled office time working with the IT department to troubleshoot computer problems.

In the Summer of 2011, CBP switched all agency computers to the Windows 7 operating system. CBP made this decision without regard for its test findings regarding the accessibility of the operating system for compliance with Section 508 of the Rehabilitation Act. As reported,

Windows 7 was found non-compliant with Section 508.  Pl. SOF ¶ 30.[8]  Because CBP failed to

take heed of its testing, to ensure that Mr. Leiterman would be able to use the new system, he

spent substantial amounts of work time in advance of this roll-out testing the operating system

and identifying accessibility issues, which further interfered with his ability to complete his legal

work.

### F.   The pattern of failure to provide accessible technology continues.

CBP wholly overlooks its continuing violations of Mr. Leiterman's right to be free of

discrimination in the workplace. As stated above, Mr. Leiterman's branch recently moved into a

new location. Awaiting Mr. Leiterman in his new office was a high-tech but inaccessible

telephone.  Pl. SOF ¶ 42.  Unlike his colleagues, Mr. Leiterman is unable to use his caller ID

because it is visual only.  Ex. 1, Leiterman Declaration at ¶ 42 & Response.  He is unable to tell

when there is a voice-mail message because the indicator is only visual.  *Id.*  If someone calls

and does not leave a voice mail message, he is unable to see the indicator with the number from

which the unanswered call came.  *Id.*  Mr. Leiterman also is unable to use the internal CBP

telephone directory that is part of the telephone.  *Id.*

Mr. Leiterman also continues to receive e-mailed documents that are inaccessible.

Pl. SOF ¶ 64.  As set out in Mr. Leiterman's Statement of Facts, documents must be prepared in

a certain fashion in order to be read by JAWS. Many CBP employees do not follow the policy

that requires the creation of accessible documents. Rather than requiring those employees to

follow agency policy, CBP has Mr. Leiterman devote his time to making the inaccessible

documents accessible through the use of technology. While some document conversion is

---

[8] To the extent CBP maintains that despite its inaccessibility Windows 7 still was the best
product available to it, Mr. Leiterman needs discovery to test that statement. Ex. 3, Second
Leiterman Declaration ¶ 13.

inevitable – for example, letters from persons not working for the agency – much of what Mr. Leiterman receives in inaccessible format is from within the agency. Indeed, some of the inaccessible documents come from the Office of Diversity and Civil Rights. *Id.*  That is consistent with the general CBP intranet, which has many pages that are inaccessible to blind users because they contain unlabeled or mis-labeled links, unlabeled graphics, unidentified Flash content, and video content that cannot be navigated using a screen reader.  *Id.*

The facts set out above make clear that CBP has consistently ignored the requirements of Section 508 and has no processes in place to ensure that technology is accessible to blind users. To the extent that the Agency claims that the quick fixes and stop-gap measures it has implemented qualify as "reasonable accommodations," the facts discussed above demonstrate that summary judgment is not appropriate, at this time, if ever.  *See Pantazes*, 366 F. Supp. 2d at 69-70.  Mr. Leiterman is at least entitled to discovery concerning the Agency's decision-making process that prevented it from implementing accessible technology for all employees.

### G.  CBP's alleged accommodations for Mr. Leiterman do not cure its discriminatory practices.

Mr. Leiterman does not concede that the Agency's proposed "accommodations" give him equivalent access to the information and services that his non-disabled co-workers have.  But, even assuming *arguendo* that CBP had fixed the technology or provided reasonable alternatives, and that those alternatives provided Mr. Leiterman the necessary access to information, Mr. Leiterman is still entitled to damages for CBP's failure to do so in the first place.  The remedies available to federal employees under Section 501 of the Rehabilitation Act are the same remedies available to them under Title VII of the Civil Rights Act. 29 U.S.C. § 794a; c*f. West v. Gibson*, 527 U.S. 212, 217 (1999) (EEOC permitted to award damages to government employees in administrative proceedings under the Civil Rights Act of 1991, §1981a(a)(1)).  Because the

remedies of Section 501 are the same as those under Title VII, Mr. Leiterman is able to proceed with his case for compensatory damages. Indeed, CBP concedes that compensatory damages are available under Section 501. Def.'s Mem. 9.[9] Thus, even if, as CBP contends, all of the discrimination had ended by the time Mr. Leiterman filed his lawsuit he still would be entitled to proceed on a damages claim.

CBP does not dispute that it has not complied with Section 508 in its procurement decisions, such that it has purchased, developed, and implemented technology that is inaccessible to the blind. Section 508 requires that the technology that all employees use in their day-to-day work be accessible. CBP's Motion demonstrates that it took years for CBP to provide Mr. Leiterman with even the solutions they claim constitute the "reasonable" accommodations. It cannot be the case that the agency can moot a plaintiff's claim for damages by dragging its feet for years and providing the requested accommodations on the eve of the employee's filing a federal civil rights suit.

CBP relies on *Taylor v. Small*, 350 F.3d at 1293-94, to claim that Mr. Leiterman's case is moot. The present case is distinguishable from *Taylor*. First, in that case, the agency "became aware" that the plaintiff had not been given the appropriate bonus for her performance evaluation immediately before the plaintiff filed suit, and promptly paid her the bonus that was erroneously withheld. *Id.* at 1290. Here, there is no dispute that Mr. Leiterman was denied and continues to be denied access to certain technology and services available to his non-disabled co-workers, and

---

[9] The question of what constitutes intent under the Rehabilitation Act has proven somewhat vexing. As the Supreme Court has noted, "[M]uch of the conduct that Congress sought to alter in passing the Rehabilitation Act would be difficult if not impossible to reach were the Act construed to proscribe only conduct fueled by a discriminatory intent. For example, elimination of architectural barriers was one of the central aims of the Act, . . . yet such barriers were clearly not erected with the aim or intent of excluding the handicapped." *Alexander v. Choate*, 469 U.S. 287, 296–97 (1985).

that CBP has been aware of these problems since at least 2009.  In *Taylor*, the plaintiff only claimed she was denied a favorable performance review and the related $500 bonus, not the ability to perform her job duties over the course of several years.

Further, Mr. Leiterman is entitled to claim compensatory damages for CBP's discrimination under Section 501.  In *Taylor*, it is not clear that the plaintiff even claimed compensatory damages other than the bonus she was initially denied but was paid before she filed suit.  In any event, one can infer from the facts in the D.C. Circuit's opinion that the timing of when the agency "became aware" of the missing bonus and when it paid that bonus to the plaintiff vitiated any claim the plaintiff had that the withholding of her bonus was intentional.

In addition, as discussed in Part III, *supra*, the elements of a disability discrimination claim are different from those in a Title VII race discrimination claim, like the one the *Taylor* plaintiff made.  Under Title VII, a plaintiff must, as a threshold matter, show that he or she suffered an "adverse employment action."  *Taylor*, 350 F.3d at 1293.  Under Section 501, there is no such requirement, and the type of "cure" at issue in *Taylor* is inapplicable.

## IV.    Mr. Leiterman Exhausted his Administrative Remedies

Despite the broad heading in its memorandum, CBP only claims Mr. Leiterman did not exhaust administrative remedies with respect to his failure to promote claim.  Mr. Leiterman's failure to promote claim, however, was not an isolated incident, but rather an ongoing discrimination.  As set forth in his Complaint, although Mr. Leiterman was actively discouraged from seeking the promotion to GS 14 when virtually all other employees of his level were given that promotion, he was erroneously given the raise associated with that promotion.  Compl. ¶¶ 44-46.  Mr. Leiterman then had the raise rescinded and was required to pay back the raise, with interest accruing, until after this lawsuit was filed.

Moreover, after he was discouraged by his then-supervisor from seeking the GS 14 promotion, Mr. Leiterman believed he would be given a good-faith chance to start over in a different division and then have another opportunity to advance to GS 14.  However, the discrimination continued in his new division, and consequently his productivity did not improve, prohibiting him from receiving the promotion.  These acts constituted a continuing violation on the agency's part.

A plaintiff may litigate claims under the continuing violation doctrine, "if he proves either a 'series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the statutory period.' " *See Howard v. Gutierrez*, 571 F. Supp. 2d 145, 153-54 (D.D.C. 2008) (quoting *Moore v. Chertoff,* 437 F.Supp.2d 156, 160 (D.D.C. 2006), *Pleasants v. Allbaugh,* 185 F. Supp. 2d 69, 73 (D.D.C. 2002), and *Palmer v. Kelly,* 17 F.3d 1490, 1495 (D.C. Cir. 1994)); *see also Anderson v. Zubieta,* 180 F.3d 329, 337 (D.C. Cir. 1999) ("Where ... discrimination is not limited to isolated incidents, but pervades a series or pattern of events which continue to within [45] days of the filing charge ..., the filing is timely ... regardless of when the first discriminatory incident occurred.") (quoting *Laffey v. Northwest Airlines,* 567 F.2d 429, 473 (D.C. Cir.1976)).  Further, other courts have held that where a defendant misled a claimant and thereby prevented him from timely filing his administrative complaint, the plaintiff is not time-barred from bringing that claim.  *See Broome v. W*., CIV. AMD 95-3587, 1995 WL 855450 (D. Md. Apr. 30, 1996) (collecting cases).  In the present case, CBP led Mr. Leiterman to believe that once it fixed his technology access and he was able to get a fresh start in a new division, he would be eligible for the GS 14 promotion.  The agency never corrected its Section 508 violations, however, and Mr. Leiterman was never made eligible for the promotion.

## CONCLUSION

CBP's Motion demonstrates that the agency believes it is entitled to ignore the proscriptions of Section 508.  Mr. Leiterman has stated a cause of action under both Section 501 and Section 508 and he is entitled to proceed with this action through discovery and trial.  For the foregoing reasons, the Court should deny CBP's Motion to Dismiss or in the Alternative for Summary Judgment.

                                        Respectfully submitted,


                                          /s/  Joseph B. Espo
                                        Joseph B. Espo, D.C. Bar No. 429699
                                        Laura Abelson
                                        BROWN, GOLDSTEIN & LEVY LLP
                                        120 E. Baltimore Street, Suite 1700
                                        Baltimore, Maryland 21202
                                        T:  (410) 962-1030
                                        F:  (410) 385-0869
                                        jbe@browngold.com
                                        labelson@browngold.com

                                        *Attorneys for Plaintiff*


## REQUEST FOR HEARING

Plaintiffs request a hearing on Defendant's Motion to Dismiss or for Summary Judgment.


                                          /s/  Joseph B. Espo
                                        Joseph B. Espo

Dated:  January 6, 2014

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 6th day of January, 2014 a copy of the foregoing

Plaintiff's Opposition to Defendant's Motion to Dismiss or for Summary Judgment, Exhibits

and proposed Order was served, through the Court's electronic transmission facilities to:


W. Mark Nebeker, Esquire
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530

*Attorney for Defendant*


    /s/  Joseph B. Espo                    
Joseph B. Espo