# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHAEL LEITERMAN,

        Plaintiff,

    v.

JEH JOHNSON, SECRETARY,
DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

        Defendants.

Civil Action No. 13-394 (CKK)

## MEMORANDUM OPINION
(July 28, 2014)

Plaintiff Michael Leiterman brings this action against Defendant Jeh Johnson[1], in his official capacity as Secretary of Homeland Security, and Defendant David Aguilar, in his official capacity as Deputy Commissioner, U.S. Customs and Border Patrol, alleging violations of the Rehabilitation Act of 1973. Presently before the Court is Defendants' [24] Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment. Upon consideration of the pleadings[2], the relevant legal authorities, and the record as a whole, the Court GRANTS IN PART AND DENIES IN PART Defendants' [24] Motion to Dismiss or, in the Alternative, for Summary Judgment. Specifically, the Court grants Defendants' motion with respect to (1) Plaintiff's

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Jeh Johnson has been automatically substituted for Janet Napolitano, whom the parties' pleadings name as Defendant.

[2] Complaint, ECF No. [1] ("Compl."); Defs.' Mot. to Dismiss, or in the Alternative, for Summ. J., ECF No. [24] ("Defs.' Mot."); Ex. To Defs.' Mot. to Dismiss, or in the Alternative, for Summ. J., ECF No. [28]. Pl.'s Opp'n to Defs.' Mot. to Dismiss, or in the Alt., for Summ. J., ECF No. [31] ("Pl.'s Opp'n"); Pl.'s Resp. to Defs.' Stmt. of Material Facts Alleged Not to Be in Dispute and Counter Statement of Undisputed Material Facts, ECF No. [31-1] ("Pl.'s Stmt."); Defs.' Reply in Support of Mot. to Dismiss, or in the Alt., for Summ. J., ECF No. [32] ("Defs.' Reply"); Defs.' Resp. to Court's July 17, 2014 Order, ECF No. [34] ("Defs.' Suppl.").

failure to promote claim, and (2) Plaintiff's claim under Section 508 of the Rehabilitation Act. In all other respects, Defendants' motion is denied.

## I. BACKGROUND

### A. Factual Background

Plaintiff Michael Leiterman is a blind attorney who has worked at the U.S. Customs and Border Protection Agency ("CBP" or "Agency"), a division of the Department of Homeland Security, since August 2006. Compl. ¶ 1. Plaintiff alleges that he has experienced various issues with information technology utilized by CBP and that CBP has failed to reasonably accommodate his disability in several respects. *See generally id.*

By way of background, Plaintiff uses several assistive technologies that allow him to perform his responsibilities as an attorney. As a blind computer user, Plaintiff utilizes "JAWS", a screen access software that converts digital information to synthesized speech. *Id.* ¶ 12. JAWS can read aloud information presented on a computer screen, including text in documents, websites, e-books, and other formats. *Id.* In order for JAWS to successfully "read" computer screens, the information on the screen must be coded so it is accessible to screen readers. *Id.* ¶ 17. In order for JAWS to successfully "read" information from a typed document that is e-mailed to a JAWS user, the document must be either a properly formatted Microsoft Word document or a properly formatted document that is converted to an accessible PDF. Pl.'s Opp'n, Ex. 3 (Suppl. Decl. of Michael Leiterman) ¶ 7. If there are images or links on a computer screen to be read by JAWS those images and links must have what are known as "alt tag" descriptions, which JAWS will read to inform the blind user of the content of the image. *Id.* ¶ 8. Because using a mouse is an inherently visual task, JAWS is operated through keyboard instructions that

allow blind users to move through a document or a website and to activate links or buttons or highlight text much as a sighted user would do. *Id.*

Yet, despite the provision of assistive software such as JAWS, Plaintiff has experienced substantial issues with the office technology he utilizes on a daily basis. First, Plaintiff alleges significant problems with his office computer. Plaintiff contends that in 2007, CBP began to "push" frequent software updates that resulted in computer "crashes" that required Plaintiff to reconfigure his computer every time he received a new update. *Id.* ¶ 10. The crashes required significant amounts of time to fix and prevented Plaintiff from accessing his computer for large portions of time. *Id.* Although CBP's information technology ("IT") department suspended the problematic software updates from November 2009 to July 2010, the technology issues have resumed since this time. *Id.* Accordingly, Plaintiff alleges that he has been required to troubleshoot his inaccessible technology from his cubicle, where his coworkers can hear his discussions with supervisors and IT personnel. *Id.* Compl. ¶ 47. Because of this lack of confidentiality, Plaintiff alleges that his colleagues have come to see him as a problem employee. Compl. ¶¶ 47-50.

In addition, in the Summer of 2011 CBP switched all Agency computers to the Windows 7 operating system, which Plaintiff contends has exacerbated the issues with his office computer. *Id.* ¶ 22. Plaintiff states that because of unresolved accessibility issues for blind users of Windows 7, he has been required to spend substantial amounts of work time testing the new operating system and identifying accessibility issues, which further interferes with his ability to complete his legal work. Compl. ¶ 23. In response, Defendants describe the Windows 7 operating system as the product that "best meets" both the Agency's business needs and accessibility standards. Defs.' Mot., Ex. 4 (Brooke Aiken Affidavit) ¶ 22. Defendants further

state that, in response to Plaintiff's concerns regarding his computer, the Agency, through Plaintiff's supervisors, as well as numerous IT personnel, engaged in extensive discussions, with and without Plaintiff, attempting to determine the cause of the computer issues, possible resolutions, and implementation of solutions that are in keeping with the Agency's IT security requirements. *Id.* ¶¶ 6-10, 12. Until a full remedy could be determined, Plaintiff was provided with an additional computer for the office and a new laptop for his home. *Id.* ¶¶ 7-8, 13. In addition, Defendants state that Plaintiff requested and was approved to have the Windows 7 system installed on his computers as an Agency tester. *Id.* ¶ 7.

Plaintiff also experiences issues relating to other office technology, specifically his office telephone. Pl.'s Opp'n, Ex. 1 (Leiterman Declaration) ¶ 42 & Response. Plaintiff is unable to use the telephone's visual caller ID function. *Id.* In addition, he is unable to tell when there is a voicemail message because the voicemail indicator is purely visual. Plaintiff is also unable to use the internal CBP telephone directory stored in the telephone. *Id.* Defendants respond that the Agency has offered to replace Plaintiff's current telephone with his previous telephone or to provide him a new phone that would allow him to use functions such as hold and conference call. Defs.' Mot., Ex. 4 ¶ 18. Defendants state that Plaintiff has rebuffed these offers, insisting instead that the Agency make his current telephone's functions accessible. *Id.* However, Defendants do not specify whether Plaintiff's previous telephone made accessible all of the features that are inaccessible on Plaintiff's current telephone.

In addition, Plaintiff alleges that he continues to receive e-mailed documents that are inaccessible because, rather than requiring other CBP employees to follow Agency policy, CBP has Plaintiff devote his time to making the inaccessible documents accessible. Pl.'s Opp'n, Ex. 3 ¶ 19. Plaintiff states that the general CBP Intranet has many pages that are inaccessible to blind

users because they contain unlabeled or mis-labeled links, unlabeled graphics, unidentified Flash content, and video content that cannot be navigated using a screen reader. *Id.* He also alleges that documents produced by CBP's Office of Diversity and Civil Rights are inaccessible because they contain content incompatible with JAWS. Compl. ¶¶ 54-58.

Plaintiff also previously experienced problems with CBP's technology for telecommuting. In 2007, Plaintiff requested and was approved to telework two days a week as a reasonable accommodation. Pl.'s Opp'n, Ex. 1 ¶ 26 & Response; Pl.'s Opp'n, Ex. 8 (Memorandum of William Rosoff). Plaintiff began telecommuting two days a week in the Spring of 2007. *Id.* Plaintiff was initially able to access the CBP network remotely using an accessible access method known as a "secure card." Pl.'s Opp'n, Ex. 1 ¶ 26 & Response. However, in 2009, CBP switched to two alternative systems for remote access – a "MobiKey" and a keyfob security device. *Id.* ¶ 31 & Response; Pl.'s Opp'n, Ex. 3 ¶ 9. Both were inaccessible to blind users like Plaintiff. Pl.'s Opp'n, Ex. 1 ¶ 35 & Response. The keyfob security device, for example, generated and visually displayed a periodically changing random set of numbers required for remote access to CBP's network. Pl.'s Stmt. ¶ 37. Plaintiff alleges that the combination of these two inaccessible devices left him unable to access the CBP network while telecommuting. Pl.'s Opp'n, Ex. 3 ¶ 9. He states that when he wanted to e-mail his colleagues or supervisors on the days when he was telecommuting, he needed to do so from his personal Hotmail account. *Id.* Plaintiff brought this issue to the attention of his supervisors as early as 2010, and over the course of the next several years, he requested a series of accommodations. Pl.'s Opp'n, Ex. 11 (November 2010 E-mails). For example, Plaintiff requested a Blackberry or other smartphone that would allow him to access his e-mail remotely. Pl.'s Opp'n, Ex. 1 ¶¶ 36-37 & Responses. The possibility of installing a secure desktop

computer in Plaintiff's home was also proposed. *Id.* ¶ 44 & Response. Although CBP officials told Plaintiff they were exploring alternative methods for him to access the Agency network, a solution that allowed Plaintiff to enjoy remote access was not adopted until approximately February 2012. Defs.' Mot., Ex. 4 ¶ 16.

On account of his disability, Plaintiff has also experienced issues with CBP's system for booking work-related travel, a program known as "FedTraveler." Pl.'s Opp'n, Ex. 1 ¶ 5 & Response. On June 8, 2011, and again on August 2, 2011, Plaintiff's supervisor offered him an opportunity to attend a CBP seminar in Philadelphia on September 12-16, 2011. Defs.' Mot., Ex. 3 (Ieva O'Rourke Affidavit) ¶ 15. In accordance with federal travel regulations, 41 C.F.R. § 301-73.101, the Agency uses the FedTraveler travel system to plan, book, track, approve, and request reimbursement for travel services for managing federal employees' official travel. *Id.* ¶ 16. Due to Plaintiff's inability to independently access FedTraveler's functions because of his disability, his supervisor, Ieva O'Rourke, in addition to also assisting Plaintiff, tasked another employee with assisting Plaintiff in planning and booking his upcoming travel. *Id.* ¶ 18. In addition, as Plaintiff did not have a government credit card, he was provided with a cash advance of $648.48 to cover hotel, meals, and incidental expenses. *Id.* ¶ 19. Ultimately, Plaintiff did not attend the September 12-16 seminar. *Id.* ¶ 22. Defendants contend that this was Plaintiff's decision. *Id.* Plaintiff offers a slightly different account, alleging that because he was required to rely on other employees to make travel arrangements for him, he was unable to have his travel arrangements booked in time and with sufficient certainty to make it to the seminar. Pl.'s Opp'n, Ex. 3 ¶ 3. Subsequently, Plaintiff was provided with assistance to use the Agency's FedTraveler system and attended an out-of-town training on a different topic on September 19-23, 2011. Defs.' Mot., Ex. 3 ¶ 23; *id.*, Attachment C (June 8 and August 2, 2011 E-mails). Plaintiff

contends that, although he requested the written materials associated with this training in an accessible format prior to his attendance, not all of the materials were accessible to him and he was thus unable to fully benefit from this training.  Pl.'s Opp'n, Ex. 3 ¶ 4.

Plaintiff also experienced problems with CBP's online training software.  The Agency's online training system is known as the Virtual Learning Center ("VLC").  Defs.' Mot., Ex. 3 ¶¶ 24.  Examples of VLC courses include "Safeguarding Classified National Security Information", "Privacy at DHS: Protecting Personal Information", "IT Security Awareness", and "Annual Integrity Awareness."  Pl.'s Stmt. ¶ 19.  Although not able to access VLC courses directly through the online software, Plaintiff received information from VLC training courses through a PDF file of the training materials.  Pl.'s Stmt. ¶ 20; Pl.'s Opp'n, Ex. 3 ¶ 5.  Employees who are not able to access the VLC are not penalized or otherwise disciplined for failing to take the required courses and Defendants state that the courses are not career-enhancing.   Defs.' Mot., Ex. 3 ¶¶ 25-26.  On this point, Plaintiff states that he has never been disciplined for failing to complete a required training.  Pl.'s Stmt. ¶ 49; Pl.'s Opp'n, Ex. 1 ¶ 7 & Response.  However, he contends that the provision of PDF files does not provide the full VLC experience enjoyed by his sighted counterparts, as he cannot utilize the software's testing feature or view videos and graphics in the courses.  Pl.'s Stmt. ¶ 49; Pl.'s Opp'n, Ex. 3 ¶ 5.  Yet, while Plaintiff cannot himself use the software's testing feature, he has received certificates for completion of VLC courses.   Defs.' Mot., Ex. 2 (Laurence Castelli Affidavit), Attachment B (Certificates of Training).

Plaintiff also alleges that he has been denied a promotion because of his disability. Plaintiff applied for a promotion from the GS 13 pay level to the GS 14 level in April 2010.  Pl.'s Opp'n, Ex. 1 ¶ 51 & Response.  According to Plaintiff, this promotion is typically automatic,

with most attorneys receiving the promotion to GS 14 one year after reaching GS 13. *Id.* ¶ 50 & Response. Even before Plaintiff submitted his application, it seems, the human resources and payroll divisions of the Agency gave Plaintiff the salary increase associated with the promotion. *Id.* ¶ 70 & Response. Plaintiff began receiving the salary increase in March 2010. *Id.* After he notified the payroll office, he continued to receive the higher salary for three pay periods before the error was corrected. *Id.* Plaintiff withdrew his application for promotion to the GS 14 level in May 2010 after being informed by his supervisors that he would not be promoted because he had not completed enough cases to advance to the GS 14 level. *Id.* ¶¶ 52-53 & Responses. Plaintiff contends that he was unable to meet these productivity thresholds because of his disability and CBP's failure to provide him with adequate adaptive technology. *Id.* ¶ 56 & Response. Although Plaintiff's supervisors indicated that he would not be given a promotion, Plaintiff was offered the opportunity to transfer to another branch of CBP where he would have the chance to reapply for promotion with a "clean slate." *Id.* ¶ 58 & Response. Plaintiff states that he did not file a grievance because he believed he would be eligible for promotion in the near future. *Id.* However, Plaintiff alleges that because his accessibility issues persisted even after his transfer, he understood that he would not be promoted by his new supervisor, Ieva O'Rourke, and did not reapply. *Id.* ¶ 59 & Response. In addition, because Plaintiff erroneously received the pay increase associated with the promotion, he has subsequently been required to pay back the overpayment with interest. Compl. ¶ 46.

On June 3, 2011, Plaintiff contacted an EEO counselor alleging that he had been discriminated against on the basis of his physical disability in several respects, including: the Agency's failure to provide accessible electronic and information technology; CBP's denying his request for a Blackberry and desktop for his home use; the denial of a promotion to the position

of CBP Attorney Advisor, GS 14 and the requirement that Plaintiff repay an erroneous pay increase; CBP employees requiring Plaintiff to troubleshoot computer issues, addressing his reasonable accommodation needs in his cubicle, and discussing the possibility that he would file an EEO complaint with employees who did not have a need to know; the denial of the opportunity to attend a training seminar during the week of September 12, 2011; and the provision of inaccessible seminar training materials.  Compl. ¶ 5; Defs.' Mot., Ex. 6 (EEO Acceptance Letter).

### B.  Procedural Background

Plaintiff filed suit in this Court on March 26, 2013, alleging violations of Sections 501 and 508 of the Rehabilitation Act of 1973.  *See* Compl. ¶ 1.  He alleges that Defendants have failed to accommodate his disability in violation of Section 501, *id.* ¶¶ 64-68, have failed to promote him because of his disability in violation of Section 501, *see id.* ¶¶ 69-70, and have failed to provide accessible information technology in violation of Section 508, *see id.* ¶¶ 60-63. In lieu of an Answer to Plaintiff's Complaint, and before the parties engaged in formal discovery in this matter, Defendants filed their [24] Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment.  Plaintiff subsequently filed an opposition, and Defendants have filed a reply.  Accordingly, the motion is now ripe for review.

## II. LEGAL STANDARD

### A.  Rule 12(b)(1)

With respect to Plaintiff's failure to promote claim, Defendants seek dismissal pursuant to Rule 12(b)(1) because Plaintiff has failed to timely exhaust his administrative remedies.  *See Rosier v. Holder*, 833 F.Supp.2d 1, 5 (D.D.C. 2011) ("the proper method for challenging exhaustion under the Rehabilitation Act is a Rule 12(b)(1) motion to dismiss for lack of subject

matter jurisdiction."). To survive a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F.Supp.2d 163, 170 (D.D.C. 2007) (citations omitted).

**B. Rule 56**

The remainder of Defendants' motion seeks dismissal for failure to state a claim, or in the alternative, summary judgment. Pursuant to Fed. R. Civ. P. 12(d), "if, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003). Here, both parties have presented matters outside of the pleadings in support of their positions. Accordingly, the Court will review the remainder of Defendants' motion under the summary

judgment standard, because "the [defendant's] motion[] [was] in the alternative for summary judgment and . . . the parties had the opportunity to submit and submitted materials in support and in opposition." *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1273 n. 5 (D.C. Cir. 1997) (determining that it would not be "unfair" to treat such a motion as one for summary judgment).

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of his position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to

properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### III. DISCUSSION

Plaintiff raises three claims under the Rehabilitation Act. First, Plaintiff argues that Defendants violated Section 508 of the Rehabilitation Act by failing to ensure that the information technology they use allows Plaintiff comparable access to information and data as enjoyed by non-disabled employees. Second, Plaintiff argues that, at various times during his employment, Defendants have failed to accommodate his disability in violation of Section 501 of the Rehabilitation Act. Finally, Plaintiff contends that Defendants' failure to promote him to the

GS 14 pay level constitutes discrimination on the basis of his disability in violation of Section 501 of the Rehabilitation Act. The Court addresses each of these claims below.

### A. Plaintiff's Section 508 Claim

Pursuant to Section 508 of the Rehabilitation Act, 29 U.S.C. § 794d:

> When developing, procuring, maintaining, or using electronic and information technology, each Federal department or agency, including the United States Postal Service, shall ensure, unless an undue burden would be imposed on the department or agency, that the electronic and information technology allows, regardless of the type of medium of the technology –
>
> (i)  individuals with disabilities who are Federal employees to have access to and use of information and data that is comparable to the access to and use of the information and data by Federal employees who are not individuals with disabilities . . . .

29 U.S.C. § 794d(a)(1)(A)(i). Plaintiff seeks to bring a claim for violation of this provision, arguing that "CBP has failed to ensure that the information technology it uses allows individuals with disabilities who are Federal employees to have access to and use of information and data that is comparable to the access to and use of information and data by Federal employees who are not individuals with disabilities." Compl. ¶ 62. Defendants respond that this claim should be dismissed, arguing, *inter alia*, that Section 508 does not contain a non-administrative private right of action permitting enforcement by a federal employee such as Plaintiff. Defs.' Mot. at 5-12.

As both parties note, Section 508(f), titled "Enforcement", permits "any individual with a disability [to] file a complaint alleging that a Federal department or agency fails to comply with subsection(a)(1) of [Section 508] in providing electronic and information technology." 29 U.S.C. § 794d(f)(1)(A). The remainder of Section 508(f) sets out two methods of enforcement, with Section 508(f)(2) titled "Administrative complaints" and Section 508(f)(3) labeled "Civil actions." *See* 29 U.S.C. § 794d(f)(2), (3). Apparently agreeing that Section 508(f)(3) is not

applicable to Plaintiff's claim[3], the parties focus their attention on Section 508(f)(2) – the

"Administrative complaints" provision – which states "[c]omplaints filed under paragraph (1)

shall be filed with the Federal department or agency alleged to be in noncompliance.  The

Federal department or agency receiving the complaint shall apply the complaint procedures

established to implement section 794 of this title for resolving allegations of discrimination in a

federally conducted program or activity."  29 U.S.C. § 794d(f)(2).  As both parties agree, 6

C.F.R. § 15.70 is the relevant Department of Homeland Security regulation implementing section

794, alternately referred to as Section 504 of the Rehabilitation Act.  See Defs.' Mot. at 7 n. 1;

Pl.'s Opp'n at 8.

In his Opposition, Plaintiff notes that this regulation states, *inter alia*, that "[t]he

Department shall process complaints alleging violations of section 504 with respect to

employment according to the procedures established by the Equal Employment Opportunity

Commission in 29 CFR part 1614."  6 C.F.R. § 15.70(b).  Pl.'s Opp'n at 8.  Plaintiff also notes

*another* provision contained in the referenced section of the Code of Federal Regulations states

---

[3] Pursuant to Section 508(f)(3), "[t]he remedies, procedures, and rights set forth in sections 794a(a)(2) and 794a(b) of this title shall be the remedies, procedures, and rights available to any individual with a disability filing a complaint under paragraph (1)."  29 U.S.C. § 794d(f)(3).  For its part, 29 U.S.C. § 794a(a)(2) states that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (and in subsection (e)(3) of section 706 of such Act, applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance of Federal provider of such assistance under section 794 of this title."  29 U.S.C. § 794a(a)(2).  Plaintiff does not argue that this provision provides Plaintiff, as a federal employee, an avenue by which to enforce Section 508 against Defendants.  In fact, he concedes the opposite.  *See* Pl.'s Opp'n at 9 ("It would be manifestly unjust to interpret Section 508 . . . to provide a right for federal employees that could not be enforced past the administrative level when all other disability discrimination claims can be brought in a civil action.  This would be an even more absurd result because Section 508, as the Agency concedes, expressly provides a right of civil action to *non-employees* who find themselves faced with inaccessible technology used by federal agencies.") (emphasis added and internal citations omitted).  Accordingly, because the parties do not argue that Section 508(f)(3) is a potential basis for Plaintiff's private cause of action, the Court does not address this issue.

that "[a] complainant who has filed an individual complaint . . . is authorized under . . . the Rehabilitation Act to file a civil action in an appropriate United States District Court [within certain time limits]." 29 C.F.R. § 1614.407. Pl.'s Opp'n at 9. Plaintiff argues that "[a] plain reading of this portion of the regulation demonstrates that *any* individual who is authorized to file an individual complaint under the administrative scheme is also 'authorized' 'to file a civil action in an appropriate United States District Court.'" Pl.'s Opp'n at 9 (emphasis in original).[4]

The Court understands Plaintiff to be arguing the following: (1) Section 508 permits the filing of administrative complaints according to the complaint procedures applicable to Section 504; (2) the regulatory complaint procedures for Section 504 state that in disputes related to employment, complaints shall be processed according to 29 C.F.R. part 1614; and (3) a provision of 29 C.F.R. part 1614, specifically 29 C.F.R. § 1614.407, authorizes the filing of a civil complaint under the Rehabilitation Act in certain circumstances. Accordingly, Plaintiff contends that he is authorized to file a civil complaint to enforce the provisions of Section 508.

Plaintiff's reliance on regulatory language to create a private cause of action that would allow him to enforce Section 508 through civil suit is unavailing. In *Alexander v. Sandoval*, 532 U.S. 275 (2001), the Supreme Court rejected a similar attempt to find a private cause of action in regulatory, rather than statutory, language. As the Court there noted, "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Id.* at 291. For this reason, Plaintiff's argument here "that the *regulations* contain rights-creating language and so must be privately enforceable . . . skips an analytical step." *Id.* (emphasis in original). To be sure, "when a statute has provided a

---

[4] Defendants, for their part, argue that the relevant statutes and regulations set forth a process for administrative review of complaints regarding Section 508 non-compliance which is ultimately reviewable under the Administrative Procedure Act. Defs.' Mot. at 8-9.

general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable." *Id.* Here, however, Plaintiff points to no statutory language providing such "a general authorization for private enforcement of regulations." Rather, the statutory language invoked by Plaintiff simply refers to these regulations as the method for processing administrative complaints, without any mention of private enforcement through civil action. The language permitting a civil action is solely in the regulation and, without more, *Alexander* compels the Court to find against Plaintiff. 532 U.S. at 291 ("[I]t is most certainly incorrect to say that the language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself."). In making this determination, the Court notes that the only other court to directly address the question of whether Section 508 creates a private, non-administrative right of action for federal employees has reached the same conclusion. *See Latham v. Brownlee*, No. 03CA0933, 2005 WL 578149, at *9 (W.D. Tex. 2005) (concluding that Section 508 "does not authorize a private, non-administrative right [of] action.").[5] Accordingly, the Court finds that Plaintiff may not bring suit directly under Section 508.

Failing in the argument that Section 508 is privately enforceable by federal employees through a non-administrative civil action, Plaintiff argues that Section 501 incorporates Section 508's specific requirement of equal access to electronic and information technology for federal

---

[5] Plaintiff cites to *Pantazes v. Jackson*, 366 F.Supp.2d 57 (D.D.C. 2005), for the proposition that "this Court has recognized an independent cause of action under Section 508 in the past." Although *Pantazes* permitted a claim under Section 508, the opinion appears to have assumed, without directly addressing, that such a private right of action exists. Indeed, a review of the briefing in the case reveals that defendant never made the argument made by Defendants here – that no private right of action exists for federal employees to directly enforce Section 508 in a civil action. *See* Mem. of P. & A. in Support of Def.'s Mot. to Dismiss and for Summ. J., *Pantazes v. Jackson*, No. 04-1056 (D.D.C. Nov. 5, 2014), ECF No. 11-2.

employees with disabilities.  Pl.'s Opp'n at 10-16.  On this point, Plaintiff contends that Section

508 provides a specific gloss on the general prohibition on disability discrimination in Section

501.  *See* Pl.'s Opp'n at 13 ("In situations where Section 501 and Section 508 both apply, *the*

*only reasonable accommodation* under Section 501 is accessible technology that complies with

Section 508.") (emphasis added).  Plaintiff analogizes to the tort principle of negligence *per se*,

in which a specific statutory provision provides a standard by which to gauge negligence.  Pl.'s

Opp'n at 13-14.  Plaintiff's argument has some surface appeal.  *See HCSC-Laundry v. United*

*States*, 450 U.S. 1, 6 (1981) (noting that "it is a basic principle of statutory construction that a

specific statute . . . controls over a general provision . . ., particularly when the two are

interrelated and closely positioned, both in fact being parts of [the same provision]").  However,

the Court is concerned that Plaintiff's argument would constitute an end-run around the scheme

for enforcement of Section 508 set up by Congress.  If a federal agency's failure to comply with

the requirements of Section 508 created *per se* liability under Section 501, then the statutory

enforcement provisions of Section 508 would be rendered superfluous.  *See Loughrin v. United*

*States*, 134 S.Ct. 2384, 2390 (2014) (noting the 'cardinal principle' of interpretation that courts

'must give effect, if possible, to every clause and word of a statute.'") (quoting *Williams v.*

*Taylor*, 529 U.S. 362, 404 (2000)).  Moreover, such a conclusion would create a *de facto* private

cause of action under Section 508 for federal employees, allowing the requirements of this

provision to be enforced indirectly through the general provisions of Section 501.  The argument

that failure to comply with Section 508 constitutes a *per se* violation of Section 501 goes too far.

Accordingly, Plaintiff's attempt to incorporate his Section 508 claim into his Section 501 claim

is rejected.

### B.  Plaintiff's Failure to Accommodate Claim

Plaintiff alleges that Defendants failed to accommodate his blindness in a number of ways. Specifically, Plaintiff contends that Defendants failed to provide him with a means of accessing Agency documents and e-mails while teleworking, *see* Compl. ¶¶ 30-38, failed to provide him with an appropriate means to attend out-of-town training conferences, *id.* ¶¶ 28-29, failed to make the Agency's online training materials accessible, *id.* ¶¶ 39-43, failed to remedy issues relating to his office computer, *id.* ¶¶ 19-24, failed to provide him with an accessible office telephone, *id.* ¶ 25, and failed to make documents produced and used by CBP accessible, *id.* ¶¶ 26, 54-59. Plaintiff also alleges that CBP employees violated his confidentiality rights in disclosing discussions related to accommodation of his disability, *id.* ¶¶ 47-50. After setting out the standard for such claims, the Court addresses each of these instances of alleged failure to accommodate below.

The Rehabilitation Act, which incorporates the standards of the Americans with Disabilities Act, requires employers to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business[.]" 42 U.S.C. § 12112(b)(5)(A). "To establish that the defendant failed to provide a reasonable accommodation, the plaintiff must show that: (1) [he] has a disability within the meaning of the statute; (2) the defendant had notice of [his] disability; (3) [he] could perform the essential functions of the employment position with or without reasonable accommodation; and (4) the defendant refused to make the accommodation." *Bonnette v. Shinseki*, 907 F.Supp.2d 54, 77 (D.D.C. 2012). "If the plaintiff establishes a prima facie case of failure to provide reasonable accommodation, then it is up to the employer to demonstrate that the accommodation would have imposed an undue burden on its business; the

ultimate burden, however, remains with the plaintiff." *Id. See also Barth v. Gelb*, 2 F.3d 1180, 1185-86 (D.C. Cir. 1993) (explaining that the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), does not apply to reasonable accommodation claims and that such claims should be tested through the "application of traditional burdens of proof.").

In order "[t]o determine what an appropriate, reasonable accommodation would be, an agency should 'initiate an informal, interactive process with the qualified individual with a disability in need of accommodation.'" *Morris v. Jackson*, --- F.Supp.2d ----, 2013 WL 5943519, at *3 (D.D.C. Oct. 30, 2013) (quoting 29 C.F.R. § 1630.2(o)(3)). "[A]n employer is not required to provide an employee that accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) (quoting *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996)). The D.C. Circuit has defined a "reasonable accommodation" as one "employing a method of accommodation that is reasonable in the run of cases . . . ." *Barth*, 2 F.3d at 1187 (emphasis omitted). "[A]ccommodations are reasonable if they allow the employee to perform the essential functions of the job without imposing undue hardship on the employer." *Norden v. Samper*, 503 F.Supp.2d 130, 145 (D.D.C. 2007). "The plaintiff bears the burden to show that the requested accommodation is reasonable on its face – the sort of accommodation that normally occurs." *Morris*, 2013 WL 5943519, at *5. "When a plaintiff can make that showing, the defendant must demonstrate special circumstances that the accommodation would impose an undue hardship." *Id.* "Undue hardship" constitutes "an action requiring significant difficulty or expense." 42 U.S.C. § 12111(10)(A). "To survive summary judgment, [a plaintiff] must demonstrate that [a defendant] failed to provide reasonable accommodations that would have allowed [him] to

perform [his] essential employment functions, and [a defendant] must show that such accommodations would have caused an undue burden." *Bonnette*, 907 F.Supp.2d at 78.

### 1. Teleworking

Plaintiff first contends that Defendants failed to accommodate his disability because he was unable to access the CBP computer network or e-mail his colleagues while working remotely. As noted, in 2007, Plaintiff requested and was approved to telework two days a week as a reasonable accommodation. Pl.'s Opp'n, Ex. 1 ¶ 26 & Response. Until 2009, Plaintiff was able to access the CBP computer network remotely through the use of a "secure card." *Id.* However, after this time, the Agency moved to remote access technology that was inaccessible to Plaintiff. *Id.* ¶ 31 & Response; Pl.'s Opp'n, Ex. 3 ¶ 9. Plaintiff requested several accommodations over the course of the next several years, including a Blackberry or other smartphone that would allow him access to his government e-mail, as well as the possibility of installing a desktop computer at his home. Pl.'s Opp'n, Ex. 1 ¶¶ 36-37, 44 & Responses. These solutions were not implemented, apparently due to various security and logistical concerns. *Id.* Ultimately, however, in February 2012, CBP's Office of Information Technology identified a way to provide remote access to the Agency's network in a manner that met the Agency's IT security requirements and was accessible. Defs.' Mot., Ex. 4 ¶ 16.

In their present motion, Defendants argue that this portion of Plaintiff's failure to accommodate claim should be rejected because he was ultimately provided an acceptable accommodation. Defs.' Mot. at 13-14. Defendants raise no other argument as to why this claim should be dismissed, asserting simply that because this issue has been remedied, Plaintiff's claim is moot. Defendants have not argued, for example, that the Agency engaged in an ultimately successful interactive process with Plaintiff in order to accommodate his disability, which might

show that the Agency lacks culpability.  Rather, Defendants rest their entire argument on the fact that Plaintiff's allegations have been cured.

Defendants' present, limited argument is insufficient to defeat Plaintiff's claim. Although Plaintiff's issues related to teleworking were ultimately accommodated, the D.C. Circuit has noted that "there are certainly circumstances in which a 'long-delayed accommodation could be considered' unreasonable and hence 'actionable under the ADA.'" *Mogenhan v. Napolitano*, 613 F.3d 1162, 1168 (D.C. Cir. 2010) (quoting *Mayers v. Laborers' Health & Safety Fund of North Am.*, 478 F.3d 364, 368 (D.C. Cir. 2007). *See also Mayers*, 478 F.3d at 368 ("we doubt that a three-year delay in accommodating a plaintiff's disability is not actionable under the ADA.  ADA accommodations must be 'reasonable,' and we are unsure how a long-delayed accommodation could be considered reasonable.").  Here, Plaintiff's issues with remote access began in 2009, and there is evidence that he sought an accommodation soon after the problems began.  However, an accommodation was not provided until 2012.  In light of this delay, extending over several years, Defendants' unadorned "no harm, no foul" argument is rejected.  Since Defendants raise no other argument for dismissing this facet of Plaintiff's claim, the Court will allow Plaintiff to pursue his allegations relating to a failure to accommodate with respect to teleworking.

### 2.  Out-of-Town Travel

Plaintiff next contends that Defendants failed to accommodate his disability in booking his travel to a work-related seminar in September 2011.  As noted, in June and August 2011, Plaintiff's supervisor offered him an opportunity to attend a CBP seminar in Philadelphia on September 12-16, 2011.  Defs.' Mot., Ex. 3 ¶ 15.  Due to Plaintiff's disability, he is unable to independently access the FedTraveler software's functions and therefore, his supervisor, Ieva

O'Rourke assisted, and asked another employee to assist, Plaintiff in planning and booking his travel to the seminar. *Id.* ¶¶ 16, 18. Plaintiff, however, did not ultimately attend the seminar. *Id.* ¶ 22. According to Defendant, Plaintiff *chose* not to attend the seminar, but instead, again with the assistance of other CBP staff, used the FedTraveler system to attend a different out-of-town training September 19-23, 2011. *Id.* ¶ 23. Plaintiff tells a different story, stating that because he was required to rely on other employees to book his travel, as of the date of his planned journey "I still did not have confirmed travel arrangements and had not received any assurance that the cash advance I needed for the trip would be paid in time for me to use it." Pl.'s Opp'n, Ex. 3 ¶ 3. Plaintiff also states that prior to the September 19-23, 2011 training, he requested materials associated with the presentation. Pl.'s Opp'n, Ex. 3 ¶ 4. Although these materials were provided to Plaintiff in advance, he contends that they were not usable because of his disability. *Id.*

In arguing that this component of Plaintiff's failure to accommodate claim should be dismissed, Defendants appear to contend that they provided Plaintiff with an alternative reasonable accommodation. Defs.' Mot. at 15-16. Although they did not make the FedTraveler software accessible to Plaintiff, they provided him the assistance of another employee, who could aid him in booking his travel. As noted, "[a]n employer is not required to provide an employee that accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Aka*, 156 F.3d at 1305 (quoting *Gile*, 95 F.3d at 499). Therefore "an employer need not offer the particular accommodation preferred by the employee so long as a reasonable alternative is provided." *Woodruff v. LaHood*, 777 F.Supp.2d 33, 43 (D.D.C. 2011). "Once an employee has established that his proposed accommodation is reasonable, the burden shifts to the employer to show that any proposed alternative accommodation is also reasonable." *Id.* at 44. Here, however, the present record reveals disputes of fact as to whether the

accommodation provided by Defendants was successful, much less reasonable. Plaintiff states that he did not attend the September 12-16, 2011 training because his reservations were not properly booked. *See* Pl.'s Opp'n, Ex. 1 at ¶ 82 & Response ("Ms. Bynum originally made the travel plans without consulting me about travel times or locations and I was not available at the times she chose."). Furthermore, Defendants do not respond to Plaintiff's argument that the two training courses concerned different subject matter, and that Plaintiff primarily sought the training associated with the September 12-16, 2011. Pl.'s Opp'n at 21-22. In addition, Defendants provide no rejoinder to Plaintiff's claim that the conference materials for the course actually attended by Plaintiff, although provided in advance, were inaccessible to a blind individual like Plaintiff. Accordingly, on the present record, the Court is not prepared to conclude that Defendants' actions with respect to out-of-town training seminars constitute a reasonable accommodation of Plaintiff's disability. Therefore, summary judgment is denied as to this component of Plaintiff's failure to accommodate claim.

In denying summary judgment as to this issue, the Court notes that Defendants present no argument that out-of-town training is not an essential function of Plaintiff's position. As previous cases have noted, "[t]he government is not obligated under the [Rehabilitation Act] to provide plaintiff with every [requested] accommodation, but only with reasonable accommodation as is necessary to enable [him] to perform [his] essential functions." *Goodman v. Potter*, 412 F.Supp.2d 11, 17 (D.D.C. 2005) (quoting *Carter v. Bennett*, 651 F.Supp. 1299, 1301 (D.D.C. 2007), *aff'd*, 840 F.3d 63 (D.C. Cir. 1988)). The Court notes that other courts have concluded that travel is not an essential function of certain jobs. *See, e.g., O'Brien v. Int'l Business Machines, Inc.*, No. 06-4864, 2009 WL 806541, at *25 n. 53 (D.N.J. 2009) ("Plaintiff does not, and cannot, contend that driving is an essential function of her job, and thus, IBM did

not have to accommodate such a request."). However, Defendants make no serious argument on this point and therefore the Court does not consider this question in this opinion. *See Howard v. Gray*, 821 F.Supp.2d 155 (D.D.C. 2011) ("In determining whether a particular function is 'essential,' [c]ourts look to a number of factors, including, among others, (1) the employer's judgment; (2) the written job description; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring performance of that function; and (5) the work experience of past incumbents in that job.") (quoting 29 C.F.R. § 1630.2(n)(3)).

### 3. Online Training Materials

Plaintiff next argues that Defendants have failed to accommodate his disability with respect to the Agency's online training materials. Defendants appear to concede that the VLC contains some inaccessible elements, but argue that Plaintiff has been provided a reasonable alternative accommodation because he has been provided PDF versions of the courses. Defs.' Mot. at 16. Plaintiff argues that the PDF files do not constitute a reasonable accommodation, as he is unable to test his knowledge and enjoy interactive elements of the online courses, such as graphics and videos. Pl.'s Opp'n at 20-21. However, Plaintiff concedes that he has not been disciplined for failure to complete courses on the VLC and that such courses are not related to promotion opportunities. Pl.'s Stmt. ¶ 49.

Plaintiff contends that this accommodation is unreasonable because he is "deprived of the benefit of the training that CBP seems to think is valuable for sighted employees. The only accommodation that is reasonable for the inaccessible VLC is to make it fully accessible." Pl.'s Opp'n at 21. While the Court is not yet prepared to adopt Plaintiff's proposed accommodation – making the VLC fully accessible – as the only reasonable accommodation, it will not grant summary judgment to Defendants at this time and on the present record. The Court notes that

Defendants appear to have made portions of the VLC accessible. Defs.' Mot. at 16. For example, although Plaintiff cannot formally test his knowledge, he is able to obtain certificates for completion of VLC courses. Defs.' Mot., Ex. 2, Attachment B. In addition, Plaintiff does not allege that his failure to complete the training in the exact manner of his sighted counterparts has resulted in his being demoted or passed over for promotion. Certainly, Plaintiff speculates that he might someday make a mistake due to ineffective training that might lead to discipline. Pl.'s Stmt. ¶ 21. Pl.'s Opp'n, Ex. 3 ¶ 6. But such speculation is likely insufficient to raise a genuine issue of material fact and preclude summary judgment.

Nevertheless, the Court believes summary judgment on this claim, at this early stage of this litigation, would be premature. The parties do not explain the content of the inaccessible features of the VLC courses. To the extent this information contained in videos and graphics is crucial to the training, and without such training Plaintiff cannot perform the essential functions of his position, he may have a viable failure to accommodate claim.

### 4. Plaintiff's Office Technology

Plaintiff also raises Section 501 concerns regarding his office technology, specifically CBP's failure to remedy computer crashes, Plaintiff's loss of work associated with updates to his computer, and Plaintiff's accessibility problems with the Windows 7 operating system. Defendants state that they attempted to accommodate Plaintiff's concerns by testing his workplace computer for problems. Defs.' Mot. at 16-18. Defendants also assert, in response to Plaintiff's complaints regarding accessibility issues, that Windows 7 has been determined to be the product which "best meets" the Agency's business needs and accessibility standards. Defs.' Mot. Ex. 4 ¶ 22. Defendants thus appear to be asserting that Windows 7 constitutes a reasonable accommodation.

Plaintiff responds that, on the present record, he lacks a basis to evaluate whether Windows 7 constitutes a reasonable accommodation. Pl.'s Opp'n at 16-17. Therefore, Plaintiff seeks discovery into what programs other than Windows 7 have been considered and how these products were evaluated for accessibility. *Id.* As of the filing of Plaintiff's motion, the parties had not engaged in any formal discovery in this matter. Rather, in support of their motion, in the alternative, for summary judgment, Defendants appear to have relied entirely on materials produced during the EEO investigation as well as affidavits from Plaintiff's supervisors and co-workers. Other courts of this district, following D.C. Circuit precedent, have concluded that "[i]n general, summary judgment in Title VII cases should be avoided where discovery has not taken place." *Hicks v. Gotbaum*, 828 F.Supp.2d 152, 159 (D.D.C. 2011) (citing *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008)). The same logic would appear to apply to claims under the Rehabilitation Act where, as here, a plaintiff argues that discovery is necessary to assess whether an accommodation offered by a defendant is reasonable.

Pursuant to Federal Rule of Civil Procedure 56(d), a court may deny a motion for summary judgment, order discovery, or "issue any other appropriate order" if the nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The affidavit or declaration "cannot be a generalized, speculative request to conduct discovery but must demonstrate that further specified discovery will defeat a summary judgment motion," *Estate of Parsons v. Palestinian Auth.*, 715 F.Supp.2d 27, 35 (D.D.C. 2010) (quoting *Maduforo v. Urban Serv. Sys. Corp.*, No. 09-0287, 2009 WL 2378743, at *1 (D.D.C. July 31, 2009)), and "show what facts [the nonmoving party] intend[s] to discover that would create a triable issue and why he could not produce them in opposition to the motion." *Byrd v. E.P.A.*, 174 F.3d 239, 248 n. 8 (D.C. Cir.

1999).  Here, Plaintiff has included with his Opposition a declaration stating, *inter alia*, that "[w]ithout discovery I can't respond to CBP's claim that non-508 compliant software "best meets" the government's needs . . . ."  Pl.'s Opp'n, Ex. 3 ¶ 13.  Although Plaintiff's statement is brief, the Court concludes that he does satisfy the standard for Rule 56(d), albeit barely.  If through discovery Plaintiff is able to find evidence that other programs were considered that were more accessible to blind users than Windows 7, such evidence would undercut Defendants' argument that Windows 7 is a reasonable accommodation here.  In addition, Defendants fail to respond to Plaintiff's request for discovery, and thus provide no reason for the Court to deny the request.  Accordingly, the Court will deny summary judgment as to Plaintiff's failure accommodate claim relating to his office computer, permitting the parties to engage in further discovery in this matter.

### 5.  Plaintiff's Office Telephone

Plaintiff also contends that his office telephone is inaccessible.  Specifically, the telephone's caller ID function is entirely visual, as is its voicemail message indicator.  Pl.'s Opp'n, Ex. 1 ¶ 42 & Response.  In addition, Plaintiff contends that he is unable to use the internal CBP telephone directory stored in the phone, which also apparently relies on sight.  *Id.*  Defendants concede that certain functions of Plaintiff's office telephone are inaccessible.  However, they state that they have offered to provide him with a previous version of his telephone or to provide him a new phone that would allow him to use functions such as hold and conference call.  Defs.' Mot. at 18.  Defendants state that Plaintiff has refused these efforts on the ground that the Agency must make all of his present telephone's functions accessible to him.  *Id.*

Defendants appear to contend that they have offered Plaintiff an alternative, reasonable accommodation which he has refused. Yet, on the present record, the Court is not prepared to agree with Defendants. Defendants do not explain whether Plaintiff's previous telephone had accessible caller ID, voicemail, and directory functions, leaving unanswered the question of whether Plaintiff's previous phone constitutes a reasonable accommodation. Furthermore, the offer to provide Plaintiff a telephone with accessible hold and conference call functions appears to be a non sequitur to Plaintiff's complaints, as he takes issue with other, allegedly inaccessible features of his current phone. Accordingly, the Court will deny summary judgment as to this issue on the present record.

### 6. Remaining Failure to Accommodate Issues

Plaintiff's Complaint raises several failure to accommodate issues that go unaddressed in Defendants' motion. Specifically, Defendants' motion does not address Plaintiff's claim that many pages on the CBP intranet are inaccessible to blind users because they contain unlabeled or mislabeled links, unlabeled graphics, unidentified Flash content, and video content that cannot be navigated using a screen reader. Compl. ¶ 26. In addition, Plaintiff contends that CBP's Office of Diversity and Civil Rights utilizes inaccessible materials, such as a website that is inaccessible to JAWS users and visual flow charts for individuals interested in filing EEO complaints. *Id.* ¶¶ 54-58. Because Defendants' filings do not respond to these issues – or do so only in the most passing fashion – the Court will allow these portions of Plaintiff's claim to proceed.

The Court also notes that Plaintiff's Complaint appears to allege violations of his confidentiality rights under the Rehabilitation Act. *Id.* ¶¶ 47-50. Plaintiff provides no statutory basis for this contention. However, the Court notes that "[i]n addition to prohibiting discrimination and retaliation in connection with an employee's disabilities, the Rehabilitation

Act provides protections against the unauthorized disclosure of an employee's medical information. Among these protections, the Act prohibits employers from inquiring into employees' medical conditions, although an exception is made for 'inquiries into the ability of an employee to perform job-related functions.'" *Koch v. Walter*, 935 F.Supp.2d 164 (citing 42 U.S.C. § 12112(d)(4)(B)). "Medical records obtained as a result of such an inquiry must be kept confidential." *Id.* (citing 42 U.S.C. § 12212(d)(4)(C)). Although the Court is skeptical that Plaintiff has appropriately invoked the provision cited above, Defendants have not presented any argument in their present motion regarding Plaintiff's confidentiality claims. Accordingly, the Court does not dismiss this claim at this time.

### C. Plaintiff's Failure to Promote Claim

Finally, Plaintiff alleges that CBP discriminated against him in violation of Section 501 of the Rehabilitation Act by failing to promote him to the GS 14 pay level because of his disability, and by requiring him to repay the erroneously granted raise with interest. Plaintiff states that he applied for a promotion from GS 13 to GS 14 in April 2010. Pl.'s Opp'n, Ex. 1 ¶ 51 & Response. According to Plaintiff, this promotion is typically automatic, with most attorneys receiving the promotion to GS 14 one year after reaching GS 13. *Id.* ¶ 50 & Response. Indeed, despite CBP's failure to act on Plaintiff's application, the human resources and payroll divisions of the Agency gave Plaintiff the salary increase associated with the promotion anyway. *Id.* ¶ 70 & Response. Plaintiff began receiving the salary increase in March 2010. *Id.* After he notified the payroll office, he continued to receive the higher salary for three pay periods before the error was corrected. *Id.* Since then he has been required to pay back the overpayment with interest. Compl. ¶ 46. However, Plaintiff did not actually receive the promotion, withdrawing his application in May 2010 after being informed by his supervisors that he would not be

receiving the promotion. Pl.'s Opp'n, Ex. 1 ¶¶ 52-53 & Responses. Plaintiff was then transferred to another division, with the understanding that he would enjoy a "clean slate" and be eligible to reapply for promotion again. *Id.* ¶ 58 & Response. Plaintiff contends that, because discrimination with respect to his disability continued in his new division, his productivity did not improve, and he did not reapply for the promotion. *Id.* ¶ 59 & Response.

Defendants argue that this claim should be dismissed because Plaintiff has failed to timely exhaust his administrative remedies. Defs.' Mot. at 3-5. In order to bring a Rehabilitation Act claim, a plaintiff must timely exhaust his administrative remedies. "Exhaustion of administrative remedies is a jurisdictional requirement for Rehabilitation Act claims." *Porter v. Sebelius*, 944 F.Supp.2d 65, 68 (D.D.C. 2013). *See also Sataki v. Broadcasting Bd. Of Governors*, 733 F.Supp.2d 1, 13 n. 14 (D.D.C. 2010) ("administrative exhaustion under the Rehabilitation Act, but not Title VII, is jurisdictional"); *Carty v. Dist. of Columbia*, 699 F.Supp.2d 1, 2 n. 2 ("under the Rehabilitation Act, exhaustion is a jurisdictional requirement that a plaintiff has the burden to plead and prove."); *Ragsdale v. Holder*, 668 F.Supp.2d 7, 16-17 (D.D.C. 2009) ("The District of Columbia Circuit has interpreted the exhaustion requirement of section 501 of the Rehabilitation Act as presenting a strict jurisdictional barrier to the filing of judicial complaints that fail to comply with that provision.") (citing *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006)). Pursuant to 29 C.F.R. § 1614.105(a)(1), in order to bring a claim under the Rehabilitation Act, "[a]n aggrieved person must initiate contact with a [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory, or in the case of personnel action, within 45 days of the effective date of the action."). *See Drewrey v. Clinton*, 466 Fed. Appx. 9, 10 (D.C. Cir. 2012) (characterizing failure to comply with this provision as "fail[ure] to exhaust [] administrative remedies."). Here, Plaintiff withdrew his application for

promotion in May 2010. However, Plaintiff did not contact an EEO counselor until June 3, 2011. Compl. ¶ 5. Accordingly, because Plaintiff's first contact with an EEO counselor occurred more than 45 days after the alleged discriminatory action, Defendants seek dismissal of Plaintiff's failure to promote claim pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Rosier*, 833 F.Supp.2d at 5 ("the proper method for challenging exhaustion under the Rehabilitation Act is a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.").

Plaintiff raises two arguments in response. First, Plaintiff argues that his failure to promote claim was not an isolated incident, but rather represented ongoing discrimination. Pl.'s Opp'n at 26-27. Plaintiff states that after he was discouraged by his then-supervisors from seeking the GS 14 promotion and when he withdrew his application he believed that he would be given a good-faith opportunity to start over in a different division and enjoy another opportunity to advance to the GS 14 level.[6] However, as noted, because the alleged discrimination with respect to Plaintiff's disability continued in his new division, his productivity did not improve, and he did not reapply for promotion, apparently based on the conclusion that he remained ineligible for promotion. Plaintiff thus argues that Defendants' failure to promote him to the GS 14 level constitutes a continuing violation, rather than a single incident in early 2010.

While noting that, "[t]he continuing violation doctrine is intricate and somewhat confusing," the D.C. Circuit has summarized the doctrine as follows: "[A] continuing violation 'is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period, typically because it is only its cumulative impact (as in the case of a hostile work environment) that reveals its illegality.'" *Keohane v. United States*, 669 F.3d 325,

---

[6] Plaintiff does not argue that the continued repayment of the erroneous pay increase renders his claim timely.

329 (D.C. Cir. 2012) (quoting *Taylor v. FDIC*, 132 F.3d 753, 765 (D.C. Cir. 1997)). Similarly, in analyzing the applicability of the continuing violation doctrine in the Title VII context, the Supreme Court has stated, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "Discrete acts such as termination, *failure to promote*, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114 (emphasis added). The continuing violation doctrine does not "make actionable either a discrete unlawful act [occurring outside the limitation period] or the 'lingering effect of an unlawful act.'" *Earle v. Dist. of Columbia*, 707 F.3d 299, 306 (D.C. Cir. 2012) (quoting *Felter v. Kempthorne*, 473 F.3d 1255, 1260 (D.C. Cir. 2007)). "Moreover, the 'mere failure to right a wrong . . . cannot be a continuing wrong . . . for that is the purpose of any lawsuit and the exception would obliterate the rule.'" *Id.* (quoting *Fitzgerald v. Seamans*, 553 F.2d 220, 230 (D.C. Cir. 1977)). Accordingly, "the continuing violation doctrine thus applies if the fact of the violation becomes apparent only by dint of the cumulative effect of repeated conduct." *Id.*[7]

---

[7] The D.C. Circuit has "occasionally recognized a second application of the continuing violation doctrine if the text of the pertinent law imposes a continuing obligation to act or refrain from acting." *Id.* at 307. "[W]here a . . . statute [] imposes a continuing obligation to act, a party can continue to violate it until that obligation is satisfied and the statute of limitations will not begin to run until it does." *AKM LLC v. Sec'y of Labor*, 675 F.3d 752, 763 (D.C. Cir. 2012) (Garland, J., concurring). "Whether the obligation is continuing is question of statutory construction." *Earle*, 707 F.3d at 307. Here, Plaintiff makes no argument that this version of the continuing violation doctrine applies, and offers no analysis of how the text of the Rehabilitation Act imposes a continuing obligation on Defendants to act with respect to Plaintiff's promotion. Therefore, the Court considers only the first, and more common, application of the continuing violation doctrine, discussed above.

Here, the continuing violation doctrine does not save Plaintiff's claim related to the denial of his promotion. The denial of Plaintiff's promotion, although ostensibly part of a sequence of events, constitutes a discrete employment action. As the D.C. Circuit has held, the continuing violation "doctrine has no applicability to "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire' because '[e]ach incident of discrimination . . . constitutes a separate actionable unlawful employment practice.'" *Mayers*, 478 F.3d at 36 (quoting *Morgan*, 536 U.S. at 114). Indeed, the "character" of the denial of Plaintiff's promotion was clear at the time he withdrew his application, and no "cumulative effect" was necessary to reveal its supposed illegality. *Keohane*, 669 F.3d at 329. *See also Dziura v. United States*, 168 F.3d 581, 583 (1st Cir. 1999) (continuing violation doctrine "is generally thought to be inapposite when an injury is definite, readily discoverable, and accessible in the sense that nothing impedes the injured party from seeking to redress it."). Nor can the mere allegation that Plaintiff continued in his position without the promotion he believed was due save Plaintiff's claim. The D.C. Circuit has "stated in no uncertain terms that the 'lingering effect of an unlawful act is not itself an unlawful act,' and that the 'mere failure to right a wrong . . . cannot be a continuing wrong which tolls the statute of limitations,' for if it were, 'the exception would obliterate the rule.'" *AKM LLC*, 675 F.3d at 757 (quoting *Felter*, 473 F.3d at 1260, and *Fitzgerald*, 553 F.3d at 230).

Failing to persuade the Court of a continuing violation, Plaintiff also raises an alternative argument, contending that Defendants misled him and thus prevented him from timely filing his administrative complaint. Pl.'s Opp'n at 27. On this point, Plaintiff argues that Defendants led him to believe that, although his present application for a promotion would not be approved, he would be given a fresh start in a new division where he would again be eligible for promotion to

GS 14.  However, because Plaintiff's technology access issues persisted after his transfer, he was never made eligible for the promotion.

Plaintiff appears to be asserting an equitable estoppel argument.  "Equitable estoppel in the statute of limitations context 'comes into play if the defendant takes active steps to prevent the plaintiff from suing on time, as by promising not to plead the statute of limitations.'"  *Smith-Haynie v. Dist. of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998) (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990)).  This argument fails for several reasons.  First, "[t]he D.C. Circuit has held that the Rehabilitation Act makes exhaustion of administrative remedies jurisdictional, and that equitable estoppel may not be invoked to undercut a jurisdictional exhaustion requirement."  *Int'l Union v. Clark*, No. 02-cv-1484, 2006 WL 2598046, at *12 (D.D.C. Sept. 11, 2006) (citing *Spinelli*, 446 F.3d at 162, and *Deaf Smith County Grain Processors, Inc. v. Glickman*, 162 F.3d 1206, 1214 (D.C. Cir. 1998)).  *See also Moore v. Schafer,* 573 F.Supp.2d 216, 220 (D.D.C. 2008) (noting that the "the D.C. Circuit has expressed skepticism that the doctrine may be used 'to undercut statutory exhaustion requirements.'") (quoting *Rann v. Chao*, 346 F.3d 192, 197 (D.C. Cir. 2003)); *Ragsdale v. Holder*, 668 F.Supp.2d 7, 17 (D.D.C. 2009) ("because the Rehabilitation Act's exhaustion requirement is jurisdictional, the Court may 'not read futility *or other exceptions* into [the] statutory exhaustion requirements where Congress has provided otherwise.'")  (quoting *Spinelli*, 446 F.3d at 162) (emphasis added in original).

Yet, even if there were no jurisdictional bar here, Plaintiff's equitable estoppel argument would still fail.  "[T]olling on estoppel grounds is proper where 'a claimant has received inadequate notice,  . . . where the court has led the plaintiff to believe that she had done everything required of her,  . . . [or] where affirmative misconduct on the part of a defendant

lulled the plaintiff into inaction.'" *Smith-Haynie*, 155 F.3d at 580 (quoting *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988)). *See also Broome v. West*, No. 95-3587, 1995 WL 855450, at *4 (D. Md. Apr. 30, 1996) ("Estoppel may be raised where the defendant affirmatively misled a claimant, or culpably prevented the plaintiff from filing an administrative charge in a timely fashion."). The D.C. Circuit has characterized equitable estoppel as a "high" "hurdle", *Smith-Haynie*, 155 F.3d at 579, holding that "[t]he court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances." *Mondy*, 845 F.2d at 1057. Indeed, "[e]quitable estoppel requires active steps amounting 'to a deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge, . . . such as hiding evidence or promising not to rely on a statute of limitations defense.'" *Chennareddy v. Dodaro*, 698 F.Supp.2d 1, 19 (D.D.C. 2009) (quoting *Hedrich v. Bd. of Regents of Univ. of Wis. Sys.*, 274 F.3d 1174, 1182 (7th Cir. 2001)). In addition, "there is a clear presumption in this Circuit against invoking the doctrine against government actors in any but the most extreme circumstances." *Int'l Union, United Gov't Security Officers of Am. v. Clark*, 704 F.Supp.2d 54, 59 (D.D.C. 2010) (citation omitted). *See also Rann*, 346 F.3d at 197 (interpreting "the Supreme Court's powerful cautions against application of the [equitable estoppel] doctrine to the government . . . as normally barring its use to undercut statutory exhaustion requirements.") (citing *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 419-24 (1990)).

Here, Plaintiff has failed to show the sort of affirmative misconduct by Defendants that would justify application of equitable estoppel. Plaintiff merely contends that his supervisors transferred him to a new division after rejecting his application for promotion, suggesting to him that he could re-apply with a clean slate in his new division. This does not rise to the level of

affirmative misconduct that triggers equitable estoppel. Indeed, other courts of this district have rejected attempts to cast informal dispute resolution as affirmative misconduct under the equitable estoppel doctrine. *See Johnson v. Dist. of Columbia*, 572 F.Supp.2d 94, 103 (D.D.C. 2008) ("even if [plaintiff's] supervisors' assurance could be construed as a commitment to resolve his grievance informally, an employer's attempt to resolve a dispute raised by an employee does not rise to the level of 'affirmative misconduct.'"); *Cristwell v. Veneman*, 224 F.Supp.2d 54, 60 (D.D.C. 2002) (holding that "participation in [a] settlement process" cannot by itself constitute "affirmative misconduct"). This conclusion is further supported by the fact that Defendants are government officials, making the invocation of the equitable estoppel doctrine inappropriate in the absence of extreme circumstances. *See United States v. Philip Morris et al.*, 300 F.Supp.2d 61, 70 (D.D.C. 2004) (noting that "neither the Supreme Court nor this Circuit has ever upheld a finding of equitable estoppel against the Government.").

In addition, with respect to Plaintiff's repayment of the erroneous pay increase, Plaintiff appears to merely use this allegation as factual support for the conclusion that he *should* have been promoted. The Court notes that Plaintiff provides no argument or legal support for the proposition that this repayment either renders his claim timely or itself constitutes discrimination on the basis of his disability. However, to the extent Plaintiff is attempting to argue something broader, his argument is rejected. Other than the failure to promote arguments discussed above, Plaintiff offers no argument for the proposition that he should be entitled to keep these erroneously disbursed funds.

Accordingly, because neither the continuing violation doctrine nor principles of equitable estoppel apply here, Plaintiff's failure to promote claim is dismissed for failure to timely exhaust administrative remedies.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' [24] Motion to Dismiss or, in the Alternative, for Summary Judgment. Specifically, the Court grants Defendants' motion with respect to (1) Plaintiff's failure to promote claim, and (2) Plaintiff's claim under Section 508 of the Rehabilitation Act. In all other respects, Defendants' motion is denied. An appropriate Order accompanies this Memorandum Opinion.


Dated: July 28, 2014

_____/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge
