UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MICHAEL LEITERMAN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 13-cv-00394 (RDM) |
| JANET A. NAPOLITANO, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' motion in limine, Dkt. 44, Defendants' motion for extension of time to designate an expert, Dkt. 45, and Defendants' unopposed motion for an extension of time to depose Plaintiff's expert, Dkt. 50. For the reasons set forth below, the motion in limine is DENIED without prejudice, the motion for an extension of time to designate an expert witness is GRANTED in part and DENIED in part, and the motion for an extension of time to depose Plaintiff's expert is GRANTED.

**I.      Background**

Plaintiff, an attorney who is blind, alleges that Defendants discriminated against him in violation of various provisions of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*. Plaintiff's complaint raised three claims: (1) that Defendants violated Section 508 of the Act, 29 U.S.C. § 794d, by failing to ensure that its information technology complies with Federal standards for accessibility; (2) that Defendants violated Section 501 of the Act, 29 U.S.C. § 791, by failing reasonably to accommodate his disability; and (3) that Plaintiff violated Section 501 of the Act

1

by failing to promote him. Dkt. 1. In a memorandum opinion dated July 28, 2014, this Court dismissed all but the second claim. Specifically, the Court dismissed Plaintiff's failure to promote claim for failure to exhaust, and his Section 508 claim on the ground that there is no private cause of action for violations of Section 508. *See* Dkt. 36 at 17. The Court also rejected Plaintiff's argument that an agency's failure to comply with Section 508 necessarily means that the agency has failed reasonably to accommodate the Plaintiff, as required by Section 501. As the Court explained, a rule that violations of Section 508 are *per se* violations of 501 "would constitute an end-run around the scheme for enforcement of Section 508 set up by Congress" and would "create a *de facto* private cause of action under Section 508 for federal employees." Dkt. 36 at 17.

The Court, however, denied Defendants' motion for summary judgment on Plaintiff's second claim, which alleges that Defendant failed reasonably to accommodate his disability in violation of Section 501 of the Act. *Id.* at 17-28. That claim is largely predicated on the difficulties that Plaintiff allegedly faced as a result of Defendants' adoption of various technologies that, Plaintiff contends, did not adequately accommodate his needs as a blind user. Among other things, Plaintiff argues that Defendants violated Section 501 the Act by failing to provide him with appropriate remote computer and email access; failing to make online training materials accessible to him; providing technology that resulted in Plaintiff losing significant work and time because of repeated computer crashes and computer updates; failing to address technological issues efficiently when they arose, including accessibility problems with the Windows 7 operating system; failing to make important parts of the Customs and Border Patrol's intranet available to blind users; and using inaccessible materials for individuals who are interested in filing Equal Employment Opportunity Commission claims. *See* Dkt. 36 at 19-28.

This Court denied Defendants' motion for summary judgment with respect to each of the above allegations.

On December 17, 2014, Plaintiffs disclosed the expert report of Sharron Rush, a purported "web asccessibility expert." Dkt. 44-1 at 5. On January 23, 2015, Defendants' counsel informed Plaintiff's counsel that Defendants intended to file a motion in limine to exclude that expert report or, in the event the motion in limine is denied, to designate a counter-expert after the Court renders a decision on the motion in limine. Dkt. 46-1 at 2. In response, Plaintiff's counsel indicated that, while Plaintiff was "willing to discuss" that issue, he was concerned that such a course of action would "stall[ ] all forward progress." Dkt. 46-2. Counsel did not discuss the issue further, although they continued to communicate about other scheduling matters. *See* Dkt. 46 at 2. More than two months later, on March 17, 2015—the day Defendants' expert disclosures were due—Defendant filed the motion in limine, along with a motion for extension of time to designate a counter-expert in the event the Court denies the motion in limine.[1] A few weeks later, on April 7, Defendant filed an unopposed motion for an extension of time to depose Plaintiff's proferred expert witness.

II.   Analysis

    a.   Defendants' Motion In Limine

In their motion in limine, Defendants move to strike Rush's expert report and to exclude her testimony pursuant to the Court's "inherent power" and Federal Rules of Evidence 401, 403, and 404(b). *See* Dkt. 44 at 1. In Defendants' view, Plaintiff's expert "seeks to instruct the fact finder on what the law is under" various statutes, including Section 508, and Plaintiff's effort to

---

[1] Although the motion for extension of time is styled as an "unopposed" motion, the parties called the court the day after it was filed to explain that its designation as unopposed was based on a misunderstanding. Plaintiff subsequently filed an opposition.

"litigate issues related to Section 508 are inappropriate, given that the Section 508 claims have been dismissed," Dkt. 44 at 3.  Defendants accordingly argue that the expert report should be excluded as irrelevant under Federal Rule of Evidence 401 or as unduly prejudicial, confusing, or misleading under Rule 403.  Defendants also argue that the expert reports constitutes an attempt to adduce evidence of Defendants' prior bad acts in order to "tarnish the Agency," in violation of Federal Rule of Evidence 404(b).

Defendants' arguments that the expert report should be struck and the expert prohibited from testifying are not persuasive.  Expert testimony is permissible where (1) the expert is qualified, and (2) the testimony is "capable of assisting the trier of fact" in "'understanding the evidence' or 'determin[ing] a fact in issue.'"  *Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1211 (D.C. Cir. 1997) (citation omitted).  Here, Defendants do not—at least at this time—challenge Rush's qualifications.[2]  They do assert, however, that "the Court, not a non-lawyer expert should instruct a jury on what the controlling law is."  Dkt. 44 at 4.  Defendants are correct that it is improbable that testimony from Plaintiff's expert on legal conclusions will assist the trier of fact, *Burkhart*, 112 F.3d at 1212, and, indeed, it is doubtful that she is qualified to testify on the meaning of the law.  Yet at the same time, "the line between an inadmissible legal conclusion and admissible assistance to the trier of fact in understanding the evidence or in determining a fact in issue is not always bright."  *Id.*  Given the challenge in attempting to draw this line in the abstract and without a full understanding of the issues for trial, the Court is not prepared to do so at this time.  Defendants may renew this issue at or shortly before trial.

---

[2]  In their motion in limine, Defendants reserved their right to challenge Rush's qualifications at a later time.  Dkt. 44 at 3 n.3.

The core of Defendants' motion to preclude Rush's testimony is their contention that her testimony seeks to opine on "the Agency's purported failure to satisfy the requirements of Section 508 in its purchase of technology," even though the Court has dismissed Plaintiff's Section 508 claim. Dkt. 2-3. Defendants thus maintain that the expert testimony is irrelevant under Rule 401 and, to the extent "it could have any marginal relevance," it is far more prejudicial than probative under Rule 403. Dkt. 51 at 4. Furthermore, they raise the specter of jury confusion and a waste of time and resources at trial. *Id.*

This argument also fails. Although the Court has held that a violation of Section 508 does not give rise to a *per se* claim under Section 501, Dkt. 36 at 16, that is far from a conclusion that issues relating to access to technology are off the table. To the contrary, access to technology is at the heart of Plaintiff's Section 501 claim, which the Court held may proceed. That claim focuses on the problems that Plaintiff allegedly faced as a result of Defendants' purported failure to ensure that he had technology that would enable him to perform his job duties. And this issue is also at the heart of Rush's expert report, which among other issues, addresses technological solutions to problems that blind individuals face when they use computers, available standards for measuring the accessibility of software and other technologies, and specific problems with the technology that Plaintiff used to perform his job. Dkt. 44-1 at 6-10.

Plaintiff is entitled to adduce evidence, including expert testimony, in an effort to show that Defendants failed reasonably to accommodate his disability by failing to adopt or provide him with technology that meets basic accessibility criteria. Any risk that such evidence will cause prejudice or confuse the jury can be addressed by appropriate jury instructions clarifying the manner in which the jury may consider that evidence and, if necessary, explaining that

violations of Section 508 do not, standing alone, show that Defendants failed reasonably to accommodate Plaintiff.

This is not to say that specific issues might not arise at trial, but the Court is not in a position to—and need not—rule on those questions now.  The expert report, for example, relies on a Section 508 compliance report.  Dkt. 44-1 at 1.  That report is not currently before the Court, and, without the actual report, the benefit of context, and further argument, the Court cannot evaluate whether Rush should be permitted to testify about all or any portion of that report.  For present purposes, it is sufficient to reject Defendants' contention that Rush's entire report should be stricken and to leave specific evidentiary issues for the pre-trial conference or trial.

Finally, Defendants' contention that Plaintiff's proffered expert report constitutes improper character evidence, which should be stricken under Rule 404(b), also fails.  Evidence of "bad behavior" (Dkt. 44 at 5) unconnected to any alleged wrong directed at the Plaintiff will be excluded at trial.  But Plaintiff may adduce—and, indeed, must adduce—evidence that Defendants failed to provide technology to accommodate Plaintiff's needs.  An accommodation is reasonable if it would "allow the employee to perform essential functions of the job without imposing undue hardship on the employer."  *Norden v. Samper*, 503 F.Supp.2d 130, 145 (D.D.C. 2007).  That inquiry may require evidence, for example, about how the technology offered by Defendants compares to other technology available in the market, the cost and efficacy of relevant technological solutions, and Defendants' efforts to evaluate and implement potential accommodations.  As the Court understands it, that is the purpose of Plaintiff's proposed expert testimony.

Accordingly, Defendants' motion in limine is DENIED without prejudice.  If Plaintiff seeks to present expert testimony at trial in a manner that violates the limitations described above

or is otherwise objectionable, Defendant may move to exclude such specific portions of the testimony at an appropriate time.

### b. Defendants' Motions For Extension Of Time

In seeking additional time to designate a counter-expert, Defendants explains that counsel's request was belated because of a family emergency. Dkt. 45 at 2. Plaintiff, in turn, asserts that Defendants have provided no "good cause" for the extension and failed to act with diligence, as required by Federal Rule of Civil Procedure 6(b), and notes that the proposed extension will delay the case, since discovery is currently set to close on April 27, 2015. Dkt. 46 at 3. As Plaintiff points out, moreover, the parties are subject to a Scheduling Order, which specifically provides that any motions for extension of time "must be filed at least four (4) business days prior to the first affected deadline" and that sets forth various other requirements with which movants must comply in order for the Court to consider a motion for extension of time.[3] Dkt. 41.

Federal Rule of Civil Procedure 6(b) provides that requests for extension of time filed on or before a deadline may be granted upon a showing of "good cause." Here, the delay in filing the motion in limine and the motion for extension of time suggests a less than ideal level of diligence, especially in light of the unambiguous language in the previous Scheduling Order. Counsel's explanation regarding his family emergency, however, provides some justification for Defendants' failure to act more promptly. In addition, allowing Defendant belatedly to designate an expert will serve the interest of justice by ensuring the full presentation of issues to the jury.

---

[3] The Court will not require Defendants to re-file a motion that complies with the requirements set forth in the scheduling order because that would likely delay the progress of the case, counter to Plaintiff's expressed interest. Defendants are cautioned, however, that the Court expects their continued compliance with the Scheduling Order.

The Court, accordingly, concludes that there is good cause to extend Defendants' deadline for expert disclosures.

At the same time, Plaintiff's concern that allowing Defendant to provide expert reports after the resolution of the motion in limine will substantially delay the case is well-taken, especially in light of the Defendants' belated filing of the motion for an extension of time. To balance the parties' respective interests, the Court will extend the time for Defendant to provide expert disclosures, but only by thirty days from the date of this Order.

Finally, Defendant has also filed an Unopposed Motion for Enlargement of Time until May 27, 2015, or, "if all counsel agree, a later date" to depose Plaintiff's expert because various logistical and geographical difficulties have made it difficult for the parties to schedule such a deposition. Dkt. 50. Good cause being shown, the Court will grant that unopposed motion.

Accordingly, it is hereby ORDERED that Defendants' motion in limine, Dkt. 44, is DENIED without prejudice. Defendants may move to exclude specific pieces of Plaintiff's proffered testimony after the Court sets a schedule for motions in limine.

Defendants' motion for extension of time to designate an expert, Dkt. 45, is GRANTED in part and DENIED in part. Defendants shall serve further disclosures, if any, under Rule 26(a)(2)(B) & (C) on or before May 18, 2015. Any such disclosures shall be limited to the issues raised in the report by Plaintiff's proposed expert Sharron Rush.

Finally, Defendants' unopposed motion for an extension of time to depose Plaintiff's expert, Dkt. 50, is GRANTED. The deadline for Defendant to depose Plaintiffs' expert is extended to May 27, 2015. It is further ORDERED that if the parties agree to extend the

deadline beyond May 27, 2015, they shall jointly file a notice with the Court specifying the date by which the deposition shall be conducted.

It is **SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: April 16, 2015